50 F.3d 299
 Patricia WILLIAMS, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant & Third Party Plaintiff-Appellee,
v.
MERIDIAN MANAGEMENT CORPORATION, formerly known as Contract
Services Company, Incorporated, Third Party
Defendant-Appellee.
 No. 94-1698.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1994.
Decided March 31, 1995.
 
 ARGUED: Kenneth Warren Smith, Haas & Dennis, P.C., McLean, VA, for appellant. Nicholas Stephan Altimari, Office of the U.S. Atty., Richmond, VA; Dawn Elizabeth Boyce, Lewis, Trichilo, Bancroft, McGavin & Horvath, P.C., Fairfax, VA, for appellees. ON BRIEF: Helen F. Fahey, U.S. Atty., Paula P. Newett, Asst. U.S. Atty., Alexandria, VA; Julia Judkins, Lewis, Trichilo, Bancroft, McGavin & Horvath, P.C., Fairfax, VA, for appellees.
 Before ERVIN, Chief Judge, and HAMILTON and LUTTIG, Circuit Judges.
 Affirmed as modified by published opinion. Judge HAMILTON wrote the opinion, in which Chief Judge ERVIN and Judge LUTTIG, joined.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 Patricia Williams (Williams) sustained personal injury when she slipped and fell in the lobby of a building leased by the United States. Alleging that the United States' negligence in maintaining the premises caused her injuries, Williams subsequently sued the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C.A. Secs. 1346(b), 2671-2680 (West 1965 & Supp.1993). The United States denied liability and in turn filed a third-party complaint against Meridian Management Corporation (Meridian), contending that Meridian, as an independent contractor, was liable for any injuries sustained by Williams. See id. Sec. 2671. Ruling from the bench, the district court granted summary judgment in favor of the United States, concluding that the FTCA provided no basis for liability on behalf of the United States. By virtue of this grant of summary judgment, the district court held that the third-party complaint was moot. Like the district court, we conclude that the United States is not liable for Williams' injuries, but we reach this conclusion via a different procedural avenue: we find that the district court should have dismissed the suit for want of subject matter jurisdiction. See Fed.R.Civ.P. 12(b)(1).
 
 I.
 
 2
 The United States leases office space (the Premises) in Arlington, Virginia, for the United States Marshal Service (USMS) and the Drug Enforcement Agency (DEA). In order to maintain the Premises, on October 1, 1992, the United States entered into a comprehensive contract with Meridian under which Meridian would provide custodial and maintenance services. This contract was in force at the time Williams was injured. The sweep of the contract was very broad and allocated to Meridian the obligation of maintaining the Premises with respect to repair, cleanliness, and safety. For instance, pursuant to the contract, Meridian, as contractor, was "fully responsible for the management, operation, maintenance, repair and support operations" of the Premises. (J.A. 29). The contract provided further that Meridian was "responsible for the day-to-day inspection and monitoring of work performed to ensure compliance with the contract requirements." Id. at 33. Additionally, the contract required that Meridian "take all necessary precautions to prevent injury to the public, building occupants, or damage to the property of others." Id. at 76. That Meridian's burdens under the contract were encompassing is therefore beyond cavil.
 
 
 3
 In addition to detailing Meridian's broad, general responsibilities, the contract also provided that Meridian undertake specific tasks. For example, the contract expressly required that Meridian keep the floors in the lobby of the Premises free of "trash and debris or foreign matter" and ensure that they be "slip resistant" on a daily basis. Id. at 27, 53. Meridian also was obligated to maintain the floor mats around the doors in good repair. Apart from keeping the floors in a safe condition, Meridian was also obligated to keep the doors and the weather stripping around them in sound repair. Indeed, the contract allocated to Meridian the duty to "provide all needed supplies, materials, equipment, vehicles, and services" in order to maintain the Premises. Id. at 29. Regarding the weather stripping, the United States twice specifically ordered Meridian to replace the weather stripping, reminding Meridian of its obligations under the contract. The United States explained that adequate weather stripping was essential to maintaining the Premises. Complying with its obligations, Meridian, after some time had elapsed, eventually replaced the weather stripping. In addition, the contract expressly recited that Meridian would comply with federal regulations providing for safety and health measures; and to this end, the standards of the Occupational Safety and Health Act (OSHA), see 29 C.F.R. Secs. 1910.1-1910.441 (1992), were incorporated into the contract. The OSHA regulations provide explicitly that "[t]he floor of every workroom shall be maintained in a clean and, so far as possible, a dry condition." 29 C.F.R. Sec. 1910.22(a)(2) (1992).
 
 
 4
 Additionally, the contract demanded that Meridian have an engineer on duty twenty-four hours per day, seven days per week so that the United States would have a responsible party to contact. The purpose of the engineer was to ensure that the Premises were maintained in a safe condition. Because the engineer was an employee of Meridian, Meridian was responsible for his work; moreover, the engineer being on-call twenty-four hours per day, Meridian had constant access to the Premises. Both by affidavit and at the hearing before the district court, the United States established that Meridian had constant access to the Premises.
 
 
 5
 With respect to implementation of Meridian's obligations, the record reveals that no United States employee or agency exercised day-to-day control or supervision over Meridian employees or the work performed by Meridian employees under the contract. Rather, the contract specified that Meridian was to "provide all management, supervision, labor, materials, supplies and equipment ... and ... plan, schedule, coordinate, and assure the efficient performance of all management, operations, maintenance, and repair ... services" at the Premises. (J.A. 27). Succinctly stated, the contract between the United States and Meridian was comprehensive and allocated authority for maintenance of the Premises to Meridian.
 
 
 6
 May 12, 1993, was marked by torrential rains in Arlington. On the day of this deluge, while walking through the lobby of the Premises, Williams slipped and fell, thereby sustaining personal injury. Asserting that the United States negligently maintained the doors and floors of the Premises by permitting water to enter the Premises and accumulate on the floor and not warn of this condition, Williams instituted suit against the United States pursuant to the FTCA. The United States answered the complaint by denying liability on behalf of its own agents or employees, positing that it was shielded by the discretionary function exception of the FTCA. Additionally, the United States filed a third-party complaint against Meridian, contending that Meridian, as an independent contractor, was responsible for any alleged injury sustained by Williams.
 
 
 7
 Opining that the issue was not whether the floor was maintained properly, but what party was responsible for properly maintaining the floor, the district court granted summary judgment in favor of the United States, concluding that maintaining the Premises in a safe condition was Meridian's responsibility. The district court apparently concluded that Meridian was an independent contractor, and thus liability for its alleged tortious conduct could not be attributed to the United States under the FTCA. In light of this ruling, the district court concluded that the third-party action was moot. Finally, the district court noted that if Williams wished to prosecute her claim, she was free to sue Meridian in state court. While the district court concluded that there was no basis for liability on behalf of the United States, it did not distinguish between liability of the United States via any alleged tortious conduct of Meridian as opposed to liability of the United States via its own agents or employees.
 
 
 8
 Williams appeals, raising essentially two issues. First, Williams contends that because Virginia law does not permit the duty to maintain premises in a safe condition to be delegated, the United States is liable for Meridian's alleged tortious conduct. Second, Williams contends that regardless of the lack of the United States' liability for Meridian's alleged tortious conduct, agents or employees of the United States are liable for her injuries.
 
 
 9
 The United States contests both contentions. First, the United States asserts that Meridian was an independent contractor liable for its own negligence and that Virginia law does not abrogate this conclusion. Second, the United States posits that its delegation of safety and maintenance measures to Meridian falls within the discretionary function exception of the FTCA, thereby precluding liability.
 
 II.
 
 10
 Before turning to the merits, we address the procedural mode in which this case should be resolved. The district court granted summary judgment in favor of the United States from the bench, but did not articulate whether it premised its ruling on Meridian's status as an independent contractor or because the discretionary function exception of the FTCA shielded the United States from liability or both. Instead, the district court summarily concluded that the FTCA provided no basis for liability against the United States. We reach two conclusions with respect to the district court's ruling. First, while we would ordinarily remand this case to the district court to resolve this ambiguity in the first instance, see Logue v. United States, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973); Berkman v. United States, 957 F.2d 108, 114-15 (4th Cir.1992), we shall resolve these issues because the parties have addressed it sufficiently to warrant our review, see Howard v. Haddad, 962 F.2d 328, 330 (4th Cir.1992) (declining to remand to the district court because the parties argued the issue in their appellate briefs and at oral argument before this court); see also Henderson v. Scientific-Atlanta, Inc., 971 F.2d 1567, 1570 (11th Cir.1992) (declining to remand the case to the district court because the issue presented was one of law that required no additional factual development), cert. denied, --- U.S. ----, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). We shall, therefore, address the possible liability of the United States via Meridian, as well as the possible liability of the United States via its own agents or employees.
 
 
 11
 Second, we observe that rather than granting summary judgment pursuant to Rule 56(c), the district court should have dismissed the suit for want of jurisdiction under Rule 12(b)(1) if the United States is not liable for Williams' injury. See Broussard v. United States, 989 F.2d 171, 177 (5th Cir.1993) (per curiam ) (noting that the proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Rule 12(b)(1), not to grant summary judgment under Rule 56(c)); Shirey v. United States, 582 F.Supp. 1251, 1259 (D.S.C.1984) (explaining that if the court lacks subject matter jurisdiction, the suit must be dismissed). We find distinguishing between the various modes of liability to have procedural ramifications. The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1), see Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991), because "[t]he party who sues the United States bears the burden of pointing to ... an unequivocal waiver of immunity," Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings. See Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.; see also Richland-Lexington Airport Dist. v. Atlas Properties, 854 F.Supp. 400, 407 (D.S.C.1994) (cogently explaining the differences between dismissal procedure under Rule 12(b)(1) and summary judgment under Rule 56(c)). We exercise plenary review over issues raised under Rule 12(b)(1). See Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972 (10th Cir.1994). The differing procedural standards of dismissal under Rule 12(b)(1) and summary judgment under Rule 56(c) are more than academic; dismissal under Rule 12(b)(1) has two consequences: one, the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction; and two, dismissal for jurisdictional defects has no res judicata effect. See 2A James W. Moore, Moore's Federal Practice p 12.07, at 12-49-12-50 (2d ed.1994). The district court implicitly recognized these principles in opining that Williams and Meridian can litigate in state court.
 
 
 12
 If, therefore, Meridian is an independent contractor, as the United States asserts, and not an agent or employee of the United States, the United States has not waived its sovereign immunity; accordingly, the case should be dismissed for want of jurisdiction under Rule 12(b)(1). See Kirchmann v. United States, 8 F.3d 1273, 1275 (8th Cir.1993) (affirming dismissal for want of subject matter jurisdiction under Rule 12(b)(1) because the entity's status as an independent contractor precluded imputed liability on behalf of the United States); Broussard, 989 F.2d at 177 (explaining that if the challenged conduct is performed by an independent contractor, the proper procedure is to dismiss for want of subject matter jurisdiction). With respect to the discretionary function exception, while the FTCA is a grant of jurisdiction that provides for a limited waiver of sovereign immunity, see United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 807-08, 104 S.Ct. 2755, 2761-62, 81 L.Ed.2d 660 (1984), if the discretionary function exception applies to limit the waiver of sovereign immunity, the jurisdictional grant is not available, and the federal court lacks jurisdiction to hear the case, see Johnson v. United States, 949 F.2d 332, 335 (10th Cir.1991). The federal courts have held consistently that they lack subject matter jurisdiction if the discretionary function exception bars the suit. See, e.g., Black Hills Aviation, Inc., 34 F.3d at 972 (affirming dismissal of claims under Rule 12(b)(1) because the claims were barred by the discretionary function exception of the FTCA); Lesoeur v. United States, 21 F.3d 965, 967 (9th Cir.1994) (stating that federal courts lack subject matter jurisdiction under the FTCA if the discretionary function exception applies); Kirchmann, 8 F.3d at 1274 (affirming dismissal, inter alia, for lack of subject matter jurisdiction given that the discretionary function exception barred the suit); Fazi v. United States, 935 F.2d 535, 539 (2d Cir.1991) (affirming dismissal of a claim for lack of subject matter jurisdiction because the discretionary function exception applied); Cisco v. United States, 768 F.2d 788 (7th Cir.1985) (noting that the discretionary function exception of the FTCA deprives federal courts of jurisdiction to entertain the suit); Shirey, 582 F.Supp. at 1259 (holding that if the discretionary function exception applies, there is no federal subject matter jurisdiction). Accordingly, if we conclude that the discretionary function exception applies to preclude this action against the United States proper, the suit must be dismissed for want of subject matter jurisdiction under Rule 12(b)(1). Governed by these precepts, we address Meridian's status as an independent contractor and then turn to the discretionary function exception.
 
 A.
 
 13
 The FTCA permits actions for damages against the United States for injuries caused by the tortious conduct of United States agents or employees acting within the scope of their employment to the extent that a private party would be liable under state law. See 28 U.S.C.A. Sec. 1346(b) (West 1993). The FTCA, therefore, provides for a limited waiver of the United States' sovereign immunity, but this waiver restricts liability to acts or omissions of agents or employees of the United States. See id. Sec. 2671. By its express terms, the FTCA does not provide for liability of the United States for the acts or omissions of independent contractors. See id. Because the United States is not liable for the acts or omissions of independent contractors, sovereign immunity has not been waived; and the doctrine therefore operates to bar suits against the United States. See Broussard, 989 F.2d at 177. Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States. See Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983). The federal courts have observed that the exceptions to immunity under the FTCA are narrow, thereby preserving congressional intention to immunize the United States from various classes of suits. See, e.g., Varig Airlines, 467 U.S. at 807-11, 104 S.Ct. at 2761-63. Material in determining whether Meridian is an independent contractor are the terms of the contract defining the relationship between it and the United States. See Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir.1982).
 
 
 14
 Given the distinction between independent contractors and agents or employees of the United States, resolving the issue of liability of the United States via Meridian hinges on Meridian's classification as an independent contractor or as an agent or employee of the United States, an issue resolved by federal, not state, law. See Logue, 412 U.S. at 528, 93 S.Ct. at 2219. The Logue Court addressed the distinction between independent contractors and United States agents and employees and articulated a test for resolving this inquiry. In Logue, the parents of a federal prisoner who committed suicide in a state jail sued the United States under the FTCA. Id. at 522, 93 S.Ct. at 2217. The parents contended that because a contract existed between the United States and the state jail under which the jail would house federal prisoners, the United States was liable for the alleged tortious conduct of the state jail. Id. at 528, 93 S.Ct. at 2219. Rejecting this contention, the Supreme Court concluded that the state jail was an independent contractor, not an agent or employee of the United States for purposes of the FTCA. Id. at 528-30, 93 S.Ct. at 2219-21. First, the Court explained that the FTCA adopted the common law's distinction between an employer's liability for its own employees and the employer's liability, or lack thereof, for the employees of a party with whom the employer contracts for a specified performance. Id. at 528, 93 S.Ct. at 2219. This distinction turns on the absence of authority to control the physical conduct of the putative independent contractor. Id. at 528-29, 93 S.Ct. at 2219-20. Second, relying on principles of agency law, the Court concluded that independent contractors were not servants or agents of the United States if the United States lacked authority "to control the detailed physical performance of the contractor." Id. at 528, 93 S.Ct. at 2219. Applying these principles, the Logue Court concluded that the state jail was an independent contractor, not an agent or employee of the United States. In reaching this conclusion, the Court explained that even though the United States retained the right to inspect the jail and demand compliance with various regulations of the Bureau of Prisons, these factors did not transmute the jail into an agent of the United States nor the jailors into employees of the United States because the United States had "no authority to physically supervise the conduct of the jail's employees." Id. at 530, 93 S.Ct. at 2220.
 
 
 15
 The principles articulated in Logue were reaffirmed in United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). Orleans presented the issue of whether a "community action agency funded under the Economic Opportunity Act of 1964 [was] a federal instrumentality or agency for purposes of [FTCA] liability." Id. at 809, 96 S.Ct. at 1973. After elucidating that the FTCA exempted from the limited waiver of liability the acts or omissions of independent contractors, the Court explained that the United States' demanding "compliance with federal standards," id. at 815, 96 S.Ct. at 1976, and its infusion of money to fund various programs "d[id] not convert the acts of entrepreneurs ... into federal governmental acts," id. at 816, 96 S.Ct. at 1976-77. Indeed, the Court opined that "by contract, the Government may fix specific and precise conditions to implement federal objectives," without abjuring its immunity. Id. Relying on Logue, the Court then explained that the "critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.' " Id. at 814, 96 S.Ct. at 1976 (quoting Logue, 412 U.S. at 528, 93 S.Ct. at 2219). The Orleans Court concluded that the agency at issue was not an agent or employee of the United States for purposes of the FTCA, even though the United States set specific conditions to implement federal objectives and took action to compel compliance with federal standards. Id. at 815, 96 S.Ct. at 1976.
 
 
 16
 Read together, Logue and Orleans establish the principle that the United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States actually supervises the "day-to-day operations" of the endeavor, Logue, 412 U.S. at 529, 93 S.Ct. at 2220. The federal courts have recognized this principle in holding that compliance with United States directives does not transmute an entity into an agent or employee of the United States. See, e.g., Berkman, 957 F.2d at 113-14 (finding no liability on behalf of the United States under the independent contractor exception of the FTCA despite the fact that the United States demanded compliance with its standards and had the right to inspect the independent contractor's work); Leone v. United States, 910 F.2d 46, 50 (2d Cir.1990) (finding no governmental liability under the FTCA, even though the United States "act[ed] generally as an overseer," because the United States did not manage the details nor supervise the activities of the alleged tortious conduct and thus the responsible party was not a federal agent or employee, but an independent contractor), cert. denied, 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991); Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 16 (1st Cir.1986) (holding no governmental liability under the FTCA for the independent contractor exception because the responsible party was not a federal agent since it, not the United States, ran the daily routine, despite the fact that the United States "owned and controlled" the premises on which the challenged conduct occurred); Kramer v. United States, 843 F.Supp. 1066, 1069-72 (E.D. Va.1994) (holding the responsible party to be an independent contractor, not a federal agent or employee for purposes of the FTCA, even though the United States retained a significant role in implementing and supervising the activities leading to the plaintiff's injuries). The First Circuit succinctly explained this rubric in opining that "[t]he right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors." Brooks v. A.R. & S. Enters., Inc., 622 F.2d 8, 12 (1st Cir.1980). As we noted previously in Wood, determining whether the responsible party was an independent contractor or an agent or employee of the United States hinges on "the primary activity contracted for and not the peripheral, administrative acts relating to such activity." Wood, 671 F.2d at 832. We reaffirmed adherence to this proposition by explaining with respect to contractual rights in an FTCA claim that writing "sufficient procedural safeguards" into a contract will not convert an independent contractor into an agent or employee of the United States. Berkman, 957 F.2d at 114.
 
 
 17
 Applying these principles to the instant appeal, we conclude that Meridian was an independent contractor, not an agent or employee of the United States. The contract between the United States and Meridian is a comprehensive instrument providing that Meridian was responsible for the maintenance of the Premises. Ensuring maintenance was the primary activity for which the United States contracted, and Meridian's obligations under the contract included ensuring that the floors were free of debris and slip-resistant. Additionally, Meridian was responsible for having an engineer on call twenty-four hours per day lest things go awry at the Premises. This contract squarely fell within the parameters set by Logue and Orleans because Meridian was responsible for the daily operations of the Premises; here, the United States neither supervised nor controlled the day-to-day operations or the custodial duties. The case law reveals that an entity's status as an independent contractor operates to insulate the United States from liability. See, e.g., Leone, 910 F.2d at 50; Letnes v. United States, 820 F.2d 1517, 1519 (9th Cir.1987); Lurch v. United States, 719 F.2d 333, 337-38 (10th Cir.1983), cert. denied, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984); Lathers v. Penguin Indus., 687 F.2d 69, 73-74 (5th Cir.1982); Moody v. United States, 753 F.Supp. 1042, 1047 (N.D. N.Y.1990); Mocklin v. Orleans Levee Dist., 690 F.Supp. 527, 529 (E.D. La.1988), aff'd, 877 F.2d 427 (5th Cir.1989). Accordingly, we hold that Meridian was an independent contractor, and thus the United States was not liable for Meridian's alleged tortious conduct. To the extent, therefore, that liability could be attributed to the United States via Meridian, that portion of the case should have been dismissed pursuant to Rule 12(b)(1).
 
 B.
 
 18
 Next, Williams posits that agents or employees of the United States are liable for her injuries, advancing two distinct but related theories of liability. First, she asserts that Virginia law renders the United States liable for her injuries. Second, she contends that agents or employees of the United States were negligent because they "would have observed [this] condition" and because they permitted this condition to exist and they failed to post "wet floor warnings" inside the Premises. (J.A. 89). We are unpersuaded by either contention.
 
 1.
 
 19
 Recognizing that Meridian's status as an independent contractor immunizes the United States from liability for any alleged tortious conduct by Meridian, Williams first invites us to hold that Virginia law renders the United States liable for her injuries. Relying principally on Dickerson, Inc. v. United States, 875 F.2d 1577 (11th Cir.1989), Williams posits that the United States is liable for her injuries under Virginia law, which provides that an occupier of land may not delegate to third persons a duty to maintain premises in a safe condition for its invitees, see Love v. Schmidt, 239 Va. 357, 389 S.E.2d 707, 710 (1990). Stare decisis, however, forecloses this contention and compels us to decline this invitation because we recently rejected such an argument, and in doing so, we expressly noted our rejection of Dickerson. See Berkman, 957 F.2d at 112-13. We, therefore, cannot subscribe to Williams' argument.
 
 
 20
 In Berkman, Berkman was injured on federal premises located in Virginia and brought suit against the United States under the FTCA. Id. at 110. The United States filed a third-party complaint against Arrow General, the entity that the United States hired to maintain the premises, asserting that Arrow General was an independent contractor and hence liable for Berkman's injuries. Id. at 111. Arguing that Virginia law did not permit delegation by the United States to maintain safe premises, Berkman contended that the independent contractor exception of Sec. 2671 did not limit the waiver of sovereign immunity provided in Sec. 1346(b). Id. at 112. Rejecting this contention, we explained that "whether a state law tort can be applied against the United States is exclusively [a matter] of federal law," and thus to prevail on his assertion that Virginia law applied to render the United States liable, Berkman had to prove "that federal law permitt[ed] the application of [Virginia] law to the United States." Id. In concluding that Berkman could not succeed in this endeavor, we explained that the FTCA classified parties as being either agents or employees of the United States or independent contractors and that independent contractors provide a broad range of work for the United States without being transformed into federal agents or employees. Id. at 112-13. Given the distinction that the FTCA created between agents and employees of the United States and independent contractors, we deduced that the thrust of the FTCA focused liability on the person whose conduct the plaintiff sought to impute to the United States, and this focus "necessarily forestall[ed] any notion that the government becomes liable, itself, for a generalized breach of duty." Id. at 113. Having concluded that federal law foreclosed the applicability of Virginia law, we held accordingly that "the independent contractor exception of Sec. 2671 shields the United States from tort liability which might otherwise arise from the performance of duties which were reasonably delegated to the contractor." Id. Hence, Williams' contention that liability can be imputed to the United States via Virginia law must fail.
 
 2.
 
 21
 Second, Williams posits that the United States was negligent in the following distinct but related manners: (1) engaging Meridian given Meridian's delay in repairing the weather stripping; (2) inspecting the Premises as evidenced by the weather stripping remaining unrepaired; and (3) agents or employees of the United States knew of the floor's condition and failed to post warning signs. Conversely, the United States maintains that it is not liable for any of its alleged tortious conduct by virtue of the discretionary function exception provided for in the FTCA. We, therefore, must examine the discretionary function exception of the FTCA, initially focusing on whether the exception applies to the United States' decision to employ Meridian.
 
 
 22
 The liability of the United States under the FTCA is limited by the discretionary function exception. This exception provides that the United States is not liable for:
 
 
 23
 [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 
 
 24
 28 U.S.C.A. Sec. 2680(a) (West 1994). The discretionary function exception to the FTCA insulates the United States from liability for its agents and employees' performance of duties involving discretionary decisions. See Boyle v. United Technologies Corp., 487 U.S. 500, 510-12, 108 S.Ct. 2510, 2517-19, 101 L.Ed.2d 442 (1988). The exception provides that agents and employees of the United States will not be held liable for their challenged conduct if performance of their duties necessarily involves making decisions that are grounded in public policy. See Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). Given that application of the exception requires the exercise of judgment grounded in policy, the exception does not apply if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id. at 536, 108 S.Ct. at 1958. Reluctant to set definite parameters for the discretionary function exception, the Court has noted that the exception has a fluid quality that escapes particular confinement. See, e.g., Varig Airlines, 467 U.S. at 807-11, 104 S.Ct. at 2761-63 (noting that "it is ... impossible[ ] to define with precision every contour of the discretionary function exception"). The purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814, 104 S.Ct. at 2765. The Court has characterized Sec. 2680(a) as "the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Id. at 808, 104 S.Ct. at 2762. In determining the applicability of the exception, the Varig Airlines Court explained that "the nature of the conduct," rather than the status of its actor, determined the applicability of the exception. Id. at 813, 104 S.Ct. at 2764. In resolving this inquiry, the focus is on whether the actor's conduct is "of the nature and quality that Congress intended to shield from tort liability." Id. In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Court reaffirmed these precepts and articulated a test to determine whether an act or omission of a United States agent or employee is shielded by the discretionary function exception. First, the exception only applies to acts or omissions that are discretionary in nature, i.e., those involving judgment or choice. If the challenged action is prescribed, and thus does not involve making choices, the exception is unavailable. Id. at 324, 111 S.Ct. at 1274. Second, the exception protects only those actions and decisions based on considerations of public policy. Thus, an action is precluded if an United States agent or employee's judgment or choice advances the purposes of a regulatory scheme that gives an employee such discretion. Id.
 
 
 25
 Application of the discretionary function exception analysis leads us to conclude that the exception applies. First, there is not a prescribed course of conduct for engaging custodial and maintenance services; rather, the Assistant Attorney General has the authority to procure such services and is permitted to exercise his discretion in engaging such services. See 28 C.F.R. Secs. 0.75, 0.76(u) (1992). Indeed, the Code of Federal Regulations provides that "the Assistant Attorney General ... [enjoys] the following specific policy functions: .... [p]erform functions with respect to the operation, maintenance, repair, preservation ... and custody of buildings occupied by the Department of Justice...." 28 C.F.R. Sec. 0.76(u) (1992) (emphasis added). Additionally, the regulations provide that the Assistant Attorney General will "[i]mplement[ ] and administer[ ] management programs for procurement ... space management, and operations and management of buildings...." 28 C.F.R. Sec. 0.77(g) (1992). The regulations, therefore, do not prescribe a course of action, but impart to the United States the discretion to exercise judgment and choice to contract for the maintenance of premises it occupies. Axiomatically therefore, the United States does not have specified instructions that it is compelled to follow. Thus, the first prong is met. Second, the decision to engage an independent contractor such as Meridian is grounded in policy because in contracting with Meridian, the United States had to balance the needs of the Premises and the desire to engage an independent contractor against the expense of engaging such services. As the Eighth Circuit noted, "the presumption under the law is that when exercising discretion accorded to it, the government's actions will be 'grounded in policy,' " Kirchmann, 8 F.3d at 1277 (quoting Gaubert, 499 U.S. at 324, 111 S.Ct. at 1274), and here that discretion is granted, and its implementation entails exercising judgment based on policy. The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception, see, e.g., Myers & Myers, Inc. v. United States Postal Serv., 527 F.2d 1252, 1256 (2d Cir.1975); Scanwell Lab., Inc. v. Thomas, 521 F.2d 941, 948 (D.C.Cir.1975), cert. denied, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); Gowdy v. United States, 412 F.2d 525, 529 (6th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969); Thompson v. Dilger, 696 F.Supp. 1071, 1077 n. 9 (E.D. Va.1988). For instance, in deciding to hire an independent contractor, the United States had to weigh concerns of expense, administration, payment, access to the Premises, and a veritable plethora of factors before arriving at the decision to engage Meridian. Were we to permit this suit to succeed, we would stymie the very purpose of the discretionary function exception by permitting the second-guessing of policy through a tort action. We find this conclusion particularly compelling given the detailed, comprehensive nature of the contract, the burdens allocated under the contract to Meridian to ensure well-maintained Premises, and the requirement that Meridian have an engineer on call twenty-four hours per day. Contracting out the responsibility to maintain the Premises while balancing fiscal considerations entails exercising judgment based on policy. A survey of the decisional law illuminates the fact that the United States' contracting with independent contractors to ensure maintenance of Premises is a discretionary function, thereby insulating the United States from liability. See, e.g., Duff v. United States, 999 F.2d 1280, 1281 (8th Cir.1993); Feyers v. United States, 749 F.2d 1222, 1227 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985); Kandarge v. United States Dep't of the Navy, 849 F.Supp. 304, 309 (D.N.J.1994); Hall v. United States General Servs. Admin., 825 F.Supp. 427, 433 (D.N.H.1993). The United States' decision to engage Meridian falls within the scope of the discretionary function exception of the FTCA.
 
 
 26
 Given that the decision to engage Meridian falls within the ambit of the discretionary function exception, we find that in this case Williams' assertions that the United States was negligent in inspecting and not posting warning signs cannot prevail because these decisions are embraced by the overarching decision to engage Meridian. See Myers & Myers, 527 F.2d at 1257. Moreover, even if the discretionary function exception did not preclude completely the liability of the United States, Williams' assertion that the United States was negligent in inspecting the Premises is belied by the facts: the record reveals uncontrovertedly that the United States offered not only various affidavits and its contract with Meridian, but also submitted a letter and minutes of a meeting proving that it demanded that Meridian repair the weather stripping, specifically reminding Meridian of its obligations under its contract to ensure sound repair. Fulfilling its obligation, Meridian replaced the weather stripping. With respect to posting warning signs in this specific case, the courts recognize that this falls within the purview of the discretionary function exception. See, e.g., Kiehn v. United States, 984 F.2d 1100, 1103 (10th Cir.1993) (stating in a failure to warn claim that "[t]he decision whether or not to post warning signs ... is clearly discretionary as it 'involves an element of judgment or choice.' "); see also Lesoeur, 21 F.3d at 969-70 (rejecting plaintiff's contention in a failure to warn context that the failure of the United States to post warning signs did not fall outside the scope of the discretionary function exception). The conclusory, self-serving affidavit of Williams to substantiate her allegation that "government employees ... would have observed" the condition of the floor, (J.A. at 89), as well as the affidavit of Douglas Brown, a Meridian employee who averred that janitorial services had to be completed by a certain hour and that security guards had "the means to notify the appropriate parties of any problems with the facility," id. at 91, does not alter the result that the discretionary function exception bars this suit. These affidavits simply do not demonstrate that the United States' actions fall outside the exception. Indeed, we conclude that the conduct here is precisely the type that the discretionary function exception is designed to shield; hence, any alleged tortious conduct by the United States is barred by the discretionary function exception. We hold, therefore, that the discretionary function exception operates to bar this suit insofar as Williams seeks to hold the United States liable for the actions of its agents or employees. Given that the discretionary function exception applies, this portion of the case should have been dismissed for want of subject matter jurisdiction under Rule 12(b)(1).
 
 III.
 
 27
 We hold that Meridian is an independent contractor and hence the United States cannot be liable for Meridian's alleged tortious conduct. This component of the case should, therefore, have been dismissed pursuant to Rule 12(b)(1). Likewise, we conclude that the discretionary function exception precludes liability on behalf of the United States; thus, this portion of the case also should have been dismissed under Rule 12(b)(1). With respect to the assertion that Virginia law imposes liability on the United States, we find that stare decisis forecloses this argument. Accordingly, the case is dismissed, and, as modified, the judgment is affirmed.
 
 
 28
 AFFIRMED AS MODIFIED.