Patricia **VIAULT** and Jerome **Viault, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 4:07–CV–41–H.

United States District Court, E.D. North Carolina, Eastern Division.

March 30, 2009.

Glenn A. Barfield, Haithcock, Barfield, Hulse & Kinsey, PLLC, Goldsboro, NC, for Plaintiffs.

Lora M.T. Tripp, U.S. Dept. of Justice, Steve R. Matheny, U.S. Attorney's Office, Raleigh, NC, for Defendant.

## ORDER

MALCOLM J. HOWARD, Senior District Judge.

This matter is before the court on the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [DE # 27]. Also before the court is plaintiffs' motion to strike the affidavits of Betty Meisenbach and Rhonda Underhill, and for leave to respond to new issues raised in the government's reply brief [DE # 36]. Appropriate responses and replies have been filed, and the time for further filings has expired. These motions are ripe for adjudication.

### STATEMENT OF THE CASE

Plaintiff Patricia Viault worked as an independent contractor for Robert B. Carr. Mr. Carr contracted with the Seymour Johnson Air Force Base in Goldsboro, North Carolina, to stock products on the shelves of the Base Commissary.

On June 7, 2004, plaintiff was working at the Commissary, stocking shelves. In the course of her duties, plaintiff was loading empty cardboard boxes onto a freight trailer located near the Commissary and owned by independent contractor Waste Industries, which had contracted with the Base for the disposal of waste cardboard. Plaintiff slipped through a hole in the floor of the freight trailer, sustaining injuries.

Plaintiff and her husband brought this action against the United States under the Federal Tort Claims Act ("FTCA"), alleging that the negligence of one or more Air Force employees proximately caused her injuries, and seeking damages for medical expenses, lost earnings, and loss of consortium. The government now moves to dismiss this action, claiming sovereign immunity. Specifically, the government argues that the "independent contractor exception" and the "discretionary function exception" in this case limit the waiver of sovereign immunity contained in the FTCA and that this court therefore lacks subject matter jurisdiction over the action.

### STATEMENT OF THE FACTS

The court recites the facts in the light most favorable to the plaintiffs. Seymour Johnson Air Force Base contracted with Waste Industries, an independent contractor, to dispose of waste cardboard at the Base Commissary. Independent vendor-stockers would unload boxes of merchandise at the Commissary, flatten the empty boxes, and place them inside a waste baler on site or inside freight trailers provided by Waste Industries. As trailers became full, Waste Industries removed the filled trailers and replaced them with empty ones.

▉ Per the terms of its agreement with Seymour Johnson Air Force Base, Waste Industries was required to "provide all personnel, equipment, tools, materials, supervision, and other services necessary to perform base refuse collection and disposal services" as defined in the "Statement of Work for Base Refuse Collection and Disposal Services." (Mem. Supp. Mot. Dismiss, Ex. A, pp. 27–28.) The government retained the right under the contract to inspect supplies and to require replacement or repair of nonconforming supplies. (*Id.* at 8.)[1]

Rhonda Underhill ("Underhill"), a commissary employee, was the self-described

---

**1.** The government invokes sections of the     "Statement of Work" referencing "contain-

"primary warehouse person" and the "person most responsible [for] taking care of the warehouse." (Underhill Dep. 8.) As part of her job, Underhill would receive empty freight trailers from Waste Industries. (*Id.* at 16.) Soon after Waste Industries began delivering the trailers, Underhill became aware that she "needed to go in each time [a trailer was delivered] and look at the floor," because she "knew that [the Base] had had problems with the floors in the trucks." (*Id.* at 17; *see also id.* at 24 (indicating that Underhill had received substandard trailers and told Waste Industries not to bring those trailers back); Meisenbach Dep. 16 ("all of us knew in the store that the trailers did have holes") and 20 (stating that "every single truck" had holes in it).) When Underhill's inspection revealed a safety hazard, she would sometimes place a cart or other marker in the problem location or tell workers to avoid the area or walk around it.

It was common for loose cardboard to fall off piles and end up on the ground, potentially obscuring hazards in the trailer flooring. (*Id.* at 14–15, 20; *see also* Meisenbach Dep. 14–15.) Underhill would regularly "nag" employees about being careful on the trailers and would remind them of the trailers' generally poor quality. (Underhill Dep. 25–26.)

Underhill was not on duty on June 7, 2004. In her absence, Underhill's supervisor, Betty Meisenbach ("Meisenbach"), was responsible for receiving trailers and making sure they were safe for vendor-stockers to walk on. (*See id.* at 19.) Meisenbach received the trailer on which plaintiff later sustained her injuries. There was a rectangular hole on the floor of the trailer, approximately eight inches by twelve inches. Meisenbach saw the hole on the floor of the trailer and meant to go back and put something over the hole but then forgot about it. (*See id.* at 22; Accident Report, Pl.'s Ex. 7, at Underhill Dep. 42 ("WHAT CAUSED THE ACCIDENT: Waste Industry brought the trailer with a hole in the bottom. He told Ms. Meisenbach, Grocery Manager and Ms. Bonita Coley (Store Worker) that [there] was [a] hole in the bottom [of] the trailer and we needed to cover it. This was not done.").) [2]

---

ers," by extension asserting that the freight trailers provided by Waste Industries were "containers" under the terms of the contract. Plaintiffs dispute this assertion. Having reviewed the contract, the court concludes for the purposes of resolving the motion to dismiss that the term "containers" used in the "Statement of Work" principally included dumpsters and did not include freight trailers. (*See* Mem. Supp. Mot. Dismiss, Ex. A, pp. 38–43 (listing "containers" by "dumpster number"); *id.* at 29, ¶ 1.1.7. (describing "containers" as having "lids and side doors").) The court will disregard those portions of the parties' arguments based on language in the "Statement of Work" referring to "containers."

**2.** The government attached an affidavit sworn by Meisenbach to its reply brief. In her deposition, Meisenbach made statements tending to lend credence to Underhill's testimony and the accident report, which bore Meisenbach's name as the accident "investigator." (*See* Meisenbach Dep. 30–31, 35–36.) However, there were gaps in Meisenbach's deposition testimony where she was unable to recall in detail certain events, Meisenbach's memory was sufficiently refreshed by the date of the affidavit (sworn *after* plaintiffs submitted their opposition to the government's motion to dismiss in this matter) to allow her to provide more detail on a crucial area of her deposition testimony. (*Compare* Meisenbach Dep. 30 ("I probably knew there was a hole in there the first day it happened, but on that day I can't remember if I told her that I was going to come back to fix it, you know.") *with* Meisenbach Aff. ¶ 6 ("As noted in my earlier deposition, I do not recall seeing a hole in the trailer ... and I did not, since I did not know about the hole, direct anyone to cover, repair, or warn others of the problem.").) The court reviews the evidence in the light most favorable to the plaintiffs and will therefore disregard the affidavit to the extent it contradicts

Vendor-stockers were instructed by one or more commissary employees to load their empty cardboard boxes onto the freight trailers provided by Waste Industries. (*See* Underhill Dep. 28; Meisenbach Dep. 9–10 (explaining that it was a rule of the commissary that vendor-stockers dispose of their empty cardboard boxes).) They were told to move as far into the trailer as possible before depositing their cardboard waste, to make the best use of available space. (*See* Underhill Dep. 14; Meisenbach Dep. 14.)

After entering the suspect trailer on June 7, 2004, plaintiff stepped on a piece of cardboard covering the aforementioned hole. Plaintiff had not been warned about the hole and no markers were posted to alert vendor-stockers to the hole's presence. The cardboard gave way and plaintiff's foot and ankle fell through the hole in the trailer, resulting in injuries to plaintiff including a trimalleolar fracture of her right ankle and a lateral ligamentous complex sprain.

The day after plaintiff sustained her injury, Meisenbach confided in Underhill that she had seen the hole and meant to address it but forgot. (Underhill Dep. 22.) Underhill described Meisenbach as "distraught" and "in tears" because Meisenbach "felt like possibly she could have prevented this accident." (*Id.* at 23.) Either Meisenbach or her Secretary, Ms. Walker, at Meisenbach's direction, prepared an accident report that indicated, in

pertinent part, that Meisenbach and another commissary employee were informed about the hole in the trailer and took no action. (Accident Report, Pl.'s Ex. 7, at Underhill Dep. 42.)

Plaintiffs brought this action on March 5, 2007. The crux of plaintiffs' claims appears at paragraph 28 of the complaint:

28. One or more of the [Air Force] employees named [in the complaint, including Underhill and Meisenbach] was negligent in one or more of the following ways:

A. by accepting and using the freight trailer when such employees [knew] or should have known that the trailer was dangerous and defective and could not be safely traversed by the persons whom the employees would direct into the trailer; and

B. Failing to repair or securely cover the hole in the bottom of the freight trailer, when such employees knew or should have known that failure to repair or securely cover the hole would likely result in injury to persons directed into the trailer, including the Plaintiffs herein; and

C. Directing the Plaintiffs to carry their waste cardboard into the freight trailer, as far toward the front as possible, when such employees knew or should have known that the Plaintiffs in doing so would traverse the area in which the hole existed in the floor of the

Meisenbach's earlier deposition. In the only other noteworthy portion of Meisenbach's affidavit, she states that she "did not see the need, nor did [she] ever routinely inspect [Waste Industries'] equipment, nor did [she] ever direct that [her] employees routinely inspect their equipment." (Meisenbach Aff. ¶ 5.) This is beside the point, since Underhill admitted that routine inspections were *her* duty and that *she* regularly dealt with poor-quality trailers. Meisenbach was merely filling in for Underhill in this regard on the date

in question. Because the only substantive information in the Meisenbach affidavit is either unhelpful or will be disregarded by the court for purposes of resolving the motion to dismiss, the court DENIES PLAINTIFFS' MOTION TO STRIKE [DE # 36] AS MOOT. To the extent the government's reply raises new issues and arguments, the court GRANTS PLAINTIFFS' MOTION FOR LEAVE TO RESPOND [also DE # 36] and will consider plaintiffs' responses to those issues and arguments.

trailer, while carrying large pieces of flattened cardboard boxes, and knew a hold in the floor was likely to at some point be covered by cardboard and so obscured from the view of such persons including the Plaintiffs who would traverse through the freight trailer; and

D. Failing to warn either Plaintiff of the existence of the hole in the floor of the freight trailer, when such employees knew or should have known that such failure to warn would result in one or the other of the Plaintiffs stepping through the hole in the floor of the freight trailer, after the hole had been obscured by cardboard on the floor of the trailer; and

E. By way of other negligent acts, errors, and/or omissions as may be shown through discovery or at trial.

(Compl. ¶ 28.) The government now moves to dismiss, arguing that this court lacks subject matter jurisdiction over the action.

### COURT'S DISCUSSION

### I. Standard of Review

In any case in federal court, the plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.

*Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999) (quotations omitted). Accordingly, the district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

### II. Analysis

#### A. *Independent Contractor Exception*

■ The United States, as sovereign, is immune from suit except to the extent it consents to be sued. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The FTCA, a limited waiver of this immunity, allows tort actions against the United States for injury to individuals resulting from negligent acts or omissions committed by "officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." 28 U.S.C. §§ 1346(b), 2671.

■ The waiver of immunity under the FTCA is limited by important jurisdictional exceptions, including the independent contractor exception, which excludes from the FTCA negligent acts and omissions of independent contractors. *Id.* § 2671; *see Orleans,* 425 U.S. at 814, 96 S.Ct. 1971; *Robb v. United States,* 80 F.3d 884, 887 (4th Cir.1996). The FTCA is strictly construed, with all ambiguities resolved in favor of the sovereign. *See Robb,* 80 F.3d at 887. By extension, the independent contractor exception has been broadly construed. *See id.* In this case, to the extent the alleged negligence arose from acts or omissions of an independent contractor, this court must dismiss the action for want of subject matter jurisdiction. The parties agree that the United States cannot be held liable for the torts of an independent contractor, but they disagree on the extent of the applicability of the independent contractor exception to the facts of this case.

■ The government first argues that the United States had no duty under its contract with Waste Industries to "repair or securely cover the hole in the bottom of

the freight trailer." (Compl. ¶ 28.B.) As a result, the government argues, plaintiffs cannot succeed on this portion of their complaint, because the only negligence alleged arose from acts or omissions of the independent contractor, Waste Industries. Plaintiffs respond by citing to several clauses in the contract—in particular Clauses 4.2 ("Quality Assurance") and 1.1.8 ("Unserviceable Containers")—that they claim impose a duty to repair on the United States. (*See* Mem. Supp. Mot. Dismiss, Ex. A, pp. 33 & 29.) [3]

■ The court finds that Clause 4.2 does no more than provide a vehicle for the government to "periodically evaluate [Waste Industries'] performance . . . through intermittent on-site inspections." (*Id.*, p. 33.) The government has the right, under this Clause, to increase or decrease the number of quality control inspections as needed. (*Id.*) At most, Clause 4.2 is a "right to inspect" of the type discussed in *Logue v. United States,* 412 U.S. 521, 528–30, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), and *Orleans,* 425 U.S. at 814–16, 96 S.Ct. 1971. In those cases, the Court highlighted the importance of determining whether the United States had authority to physically supervise the conduct of an independent contractor's employees. *Logue,* 412 U.S. at 530, 93 S.Ct. 2215; *Orleans,* 425 U.S. at 814, 96 S.Ct. 1971. If it did, the contractor might be a servant or agent of the United States, in which case the independent contractor ex-

ception would not apply. If, however, the government did not have such authority, neither a "right to inspect" nor a right to demand compliance with specific contractual provisions aimed at implementing federal objectives would transmute the independent contractor into an agent of the United States. *Williams v. United States,* 50 F.3d 299, 306 (4th Cir.1995) (discussing *Logue* and *Orleans* ). Here, Clause 4.2 merely provides the government the right to "monitor," "evaluate," and "inspect" the contractor's work, not to supervise or direct the conduct of Waste Industries employees. Therefore, contrary to plaintiffs' argument, Clause 4.2 cannot serve as a basis for holding the independent contractor exception inapplicable in this case.

As plaintiffs have pointed to no other evidence of an agreement between the United States and Waste Industries under which the government was able to "control the detailed physical performance of the contractor," *Logue,* 412 U.S. at 526, 93 S.Ct. 2215, and to no other basis for holding the United States accountable for its failure to repair or securely cover the hole in the bottom of the freight trailer, the court GRANTS the government's motion to dismiss as it pertains to the allegations in paragraph 28.B. of the complaint, based on the independent contractor exception.[4]

**B.   *Discretionary Function Exception***

■ The discretionary function exception excludes from the FTCA

---

**3.** As explained *supra* note 1, the court rejects plaintiffs' argument to the extent it relies on Clause 1.1.8, which deals explicitly and exclusively with "containers," because, as plaintiffs themselves argued, the freight trailers at issue here cannot reasonably be called "containers" under the language of the contract. (*See* Mem. Opp. Mot. Dismiss 11–12.) Moreover, even if the freight trailers were "containers," Clause 1.1.8 merely provides the government a right to inspect containers and demand replacements. Clause 1.1.6.5, by contrast,

places "[responsibility] for maintaining the appearance and sanitary condition of the containers [and] keeping the containers in a good, safe, operable condition" squarely on *the contractor.*

**4.** The government moves to dismiss two other portions of the complaint based on the independent contractor exception. The court rejects the government's arguments on this score but does not address them in detail in light of the holding in the following section.

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception serves as "the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. 2755.

■■■ The Supreme Court has articulated a two-pronged test establishing when the exception applies. *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). First, the exception applies only to acts or omissions that are discretionary in nature. If the challenged act or omission does not involve choice but instead is prescribed, the exception does not apply. *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. Second, the exception is only applicable to actions or choices "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954. This latter prong has proven resistant to uniform application, with "Congress and the Supreme Court [leaving] it up to the lower courts to define this vague standard," which in practice has "produced a large number of inconsistent holdings in the circuit and district courts." *Rosebush v. United States*, 119 F.3d 438, 445 (6th Cir. 1997) (Merritt, J., dissenting).

■■■ Nevertheless, one aspect of the second prong's application is certain and inflexible: "the nature of the conduct, rather than the status of the actor," determines the applicability of the exception. *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. 2755 (explaining that a reviewing court focuses on whether the conduct is "of the nature and quality that Congress intended to shield from tort liability."). This is an objective inquiry, in which the court considers whether challenged actions were "*susceptible to* policy analysis, not whether they were *the result of* policy analysis." *Rosebush*, 119 F.3d at 444 (majority op.) (emphasis added) (quotations omitted); *see also Hughes v. United States*, 110 F.3d 765, 768 (11th Cir.1997). In this regard, the Fourth Circuit has explained, "When a public employee makes a discretionary judgment in performing governmental duties, that judgment is entitled to immunity from liability whether or not the discretion involved be abused." *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir.2002) (quotations omitted); *see also Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir. 1986) ("even the negligent failure of a discretionary government policymaker to consider all relevant aspects of a subject matter under consideration does not vitiate the discretionary character of the decision that is made.").

In applying these principles and the two-pronged *Berkovitz/Gaubert* test, this court is guided by the Fourth Circuit opinions in *Williams* and *Smith*.[5] In

---

**5.** A more recent case, *Hawes v. United States,* 409 F.3d 213 (4th Cir.2005), parallels the instant case in some respects better than either *Williams* or *Smith*. However, *Hawes* lost

*Williams,* the plaintiff slipped and fell in the lobby of a building leased by the United States. The United States had contracted with an independent contractor for custodial and maintenance services. The court held that the discretionary function exception shielded the United States from liability because the contract in that case comprehensively allocated responsibility for maintenance of the premises to the independent contractor, and the decision to hire the independent contractor on such terms was a discretionary function that "involve[d] exercising judgment based on considerations of policy." *Williams,* 50 F.3d at 310. Furthermore, the court held that the plaintiff's claim of negligence based on the government's alleged failure to post warning signs, where government officials allegedly knew of the hazardous condition, could not prevail because the decisions to inspect and not post warning signs were "embraced by the overarching decision to engage [the independent contractor]." *Id.*

*Smith* arose out of the tragic death of an individual who suffered a heart attack after climbing an escalator that was being used as a stairway in a government-operated train station. The decedent's parents sued the government, alleging in pertinent part that station employees were negligent in braking the sole working escalator for use as a stairway; in leaving another escalator disassembled pending repair; and in failing to warn patrons of the condition of the escalators. The court held that the decision to shut down the station's one working escalator, instead of leaving the escalator in operation and forcing patrons traveling in the opposite direction to use an elevator, "was plainly of the discretionary variety, and . . . entitled to be accorded immunity protection." *Smith,* 290 F.3d

at 209, Similarly, the court held that the employees' decision not to reassemble the other escalator was "susceptible to policy analysis" and "involved the exercise of economic policy judgment." *Id.* at 210 (citations omitted). Finally, the court held that the employees' failure to warn patrons of the "open and obvious hazard" presented by the escalators' conditions was "discretionary and exempt from an action in tort." *Id.* (quotations omitted).

In this case, plaintiffs offer three theories of negligence that potentially implicate the discretionary function exception: government employees were negligent in accepting and using a freight trailer that the employees knew or should have known was defective, dangerous, or unsafe (Compl. ¶ 28.A.); government employees were negligent in directing the plaintiffs to carry waste cardboard as far to the front of the freight trailer as possible, when the employees should have known that doing so would cause plaintiffs to encounter hazardous conditions in the trailer (Compl. ¶ 28.C); and government employees were negligent in failing to warn plaintiff of the existence of the hole in the floor of the freight trailer, when the employees knew or should have known of the existence of the hole and of the likelihood that the hole would have become concealed by fallen cardboard on the trailer floor (Compl. ¶ 28.D.).

■ The court has little trouble in concluding that plaintiffs' first two theories are foreclosed by application of the discretionary function exception. The decision to accept and use freight trailers supplied by the independent contractor was "susceptible to policy analysis" and "involved the exercise of economic policy judgment." *Smith,* 290 F.3d at 210 (citations omitted).

its precedential value when the panel opinion in *Hawes* was vacated by the subsequent granting of rehearing en banc. Fourth Circuit Local Rule 35(c). The appeal was dismissed before the court decided the case en banc.

Trailers supplied by Waste Industries commonly had holes in the floors, so refusing to accept any such trailers would have resulted in significant inconvenience to workers and might have generated a need to hire other independent contractors for base refuse collection and disposal services, or to resort to other methods for disposing of waste cardboard. Under these circumstances, the government employees' decision to regularly accept freight trailers that they knew or should have known were in imperfect condition, including the decision to accept and use the trailer on which plaintiff sustained her injury, was a discretionary function involving an element of judgment or choice and is entitled to immunity protection.

■ Similarly, the government employees' decision to direct vendor-stockers to proceed as far into the trailer as possible before stacking cardboard is susceptible to policy analysis and involves the exercise of economic policy judgment. Were it not for this employee-directed practice, it is fair to say the efficiency of the disposal of waste cardboard would be negatively impacted and the United States might well be required to seek additional trailers or more frequent exchanges of empty trailers for full ones, generating increased costs and potential delays or inconvenience for the workers responsible for the disposal of waste cardboard, including both government employees and vendor-stockers employed by independent contractors.

■ Plaintiffs' final theory of negligence must also be rejected, though it presents a significantly closer question. Viewing the facts in the light most favorable to the plaintiffs, Meisenbach received the suspect trailer on June 7, 2004; noticed the hole in the floor and was warned about it by a Waste Industries employee; and intended to return to put something over the hole but ultimately forgot to do so.

The court holds that Meisenbach's inspection of the trailer and her failure to post a warning sign after discovering the hazard, like the allegedly negligent acts and omissions in *Williams,* are "embraced by the overarching decision to engage" Waste Industries. *Williams,* 50 F.3d at 310. Because the decision to engage the independent contractor itself "falls within the ambit of the discretionary function exception," so too does the alleged negligence in this case. *Id.*

Had the government undertaken, in its discretion, to require that its employees post warnings of defective conditions on trailers, the government would have been liable for its employees' negligence in their execution of this requirement. *Compare Reminga v. United States,* 631 F.2d 449 (6th Cir.1980) (once the government exercised its discretion to issue navigational charts, it was liable for negligently failing to accurately locate hazards on charts that it published) *with Myslakowski* (failure of postal employees to warn purchasers of surplus postal service jeeps about high rollover propensity did not give rise to liability because departmental policy did not require that such warnings be given). However, the government's failure to require such warnings was part of its discretionary decision to contract with Waste Industries. *See Myslakowski,* 806 F.2d at 98. As the Sixth Circuit held in *Myslakowski,* "Arguably, it was negligent for [government] policymakers to have failed to require warnings, but it is for just such negligent decisionmaking that Congress has determined that the government is to be immune from tort liability." *Id.; see Varig Airlines,* 467 U.S. at 820, 104 S.Ct. 2755.

Even if the court were to focus solely on Meisenbach's acts and omissions, with no broader context, plaintiffs could not prevail. The record reveals that Meisenbach

*inspected* the trailer and *found* the hole. Therefore, her inspection itself was not negligent. As for the subsequent failure to warn, this circuit and others have held that a failure to post warning signs "falls within the purview of the discretionary function exception." *Williams,* 50 F.3d at 310; *see Rosebush,* 119 F.3d at 443 ("the decision whether to warn of a potential danger is a protected discretionary function"); *Kiehn v. United States,* 984 F.2d 1100, 1103 (10th Cir.1993) ("The decision whether or not to post warning signs ... [is] discretionary as it involves an element of judgment or choice." (quotations omitted)); *Lesoeur v. United States,* 21 F.3d 965, 969–70 (9th Cir.1994).

Plaintiffs argue that the concealed character of the hole in the freight trailer distinguishes this case from *Smith* and other similar cases. *See Smith,* 290 F.3d at 210 ("[A]ny duty to warn of this *open and obvious* hazard is discretionary and exempt from an action in tort." (emphasis added) (quotations omitted)). The court finds that the hole here, though not as "open and obvious" as the hazard in *Smith,* was nevertheless one that plaintiffs were aware of as a consequence of their prior experience with defective trailers provided by Waste Industries. Uncontroverted evidence demonstrates that Underhill warned vendor-stockers repeatedly of unsafe conditions on trailers, and that vendor-stockers, including plaintiffs, witnessed the conditions of the trailers firsthand. Although Meisenbach may have failed to warn plaintiffs about the dangers of this particular trailer, plaintiffs' experience put them on notice of the strong likelihood of hazardous conditions in the trailers provided by Waste Industries. An owner has no duty "to warn an invitee of a danger or condition which is obvious or of which the invitee has equal or superior knowledge." *Sexton v. United States,* 797 F.Supp. 1292, 1302 (E.D.N.C.1991) (citations omitted).

For the foregoing reasons, the court GRANTS the government's motion to dismiss as it pertains to all of plaintiffs' negligence claims not already addressed *supra* Part II.A., based on the discretionary function exception.

### *CONCLUSION*

Plaintiffs' Motion to Strike and for Leave to Respond [DE # 36] is GRANTED IN PART AND DENIED AS MOOT IN PART. The government's motion to dismiss [DE # 27] is GRANTED, and plaintiffs' claims are DISMISSED for lack of subject matter jurisdiction. The clerk is directed to close this case.