PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRED SUTER; TERRY D. SUTER; GREEN
MEADOWS, LLC; PAULA TOTHEROW;
DONNA L. HELMS; STEPHEN MILLER;
HILDA A. TOTHEROW; GINNY
BLANKENSHIP; ARTHUR HELMS, III;
WILLIAM E. FOWLER; CAROLYN
FOWLER; SIDNEY A. LIVINGSTON;
EUGENE ROYALS; DENNIS GRUBAUGH;
DEBORAH GRUBAUGH; JAMES KOENIG;
MICHELLE KOENIG; DAN E. HOLMAN;
FRANKIE EDMUNDSON; FRANK
GOODMAN; ANGELO ANTONUCCI;
MARSHALL S. REDDING, Dr.; G.
DOUGLAS HAYDEN, JR.; CLAUDE G.
CRISP; STEPHEN M. SCHWARTZ; DALE
C. PETERS; ALMA B. SCHWARTZ,
        *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
        *Defendant-Appellee.*

No. 05-1521

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-04-358-3)

Argued: February 2, 2006

Decided: March 28, 2006

Before WILKINS, Chief Judge, and NIEMEYER and
WILLIAMS, Circuit Judges.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Niemeyer and Judge Williams joined.

---

## COUNSEL

**ARGUED:** Emerson R. Marks, Jr., Charlottesville, Virginia, for Appellants. Joshua Paul Waldman, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, Appellate Section, Washington, D.C., for Appellee. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Gretchen C. F. Shappert, United States Attorney, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, Appellate Section, Washington, D.C., for Appellee.

---

## OPINION

WILKINS, Chief Judge:

Appellants, victims of a fraudulent investment scheme, appeal a district court order dismissing, for lack of subject matter jurisdiction, their action against the United States alleging that an undercover federal agent improperly participated in the scheme. We affirm, albeit on a basis different from that relied on by the district court.

### I.

Appellants are victims of a large-scale Ponzi and money laundering scheme that was perpetrated between 1998 and 2001. As the result of an undercover investigation by an FBI agent using the fictitious name "John Vega," a number of the participants in the scheme were successfully prosecuted.[1]

Appellants brought this action against the United States under the Federal Tort Claims Act (FTCA), *see* 28 U.S.C.A. §§ 1346(b), 2671-

---

[1]Appellants have brought a separate civil action against the perpetrators of the scheme. That action, which is currently pending, is not at issue here.

2680 (West 1994 & Supp. 2005), alleging that the FBI, in connection with its investigation of the fraudulent scheme, "participated in the very frauds which it was investigating." J.A. 15. In particular, Appellants claim that Vega—with the full knowledge of the FBI—"assisted the criminals by helping them to conceal and perpetuate their frauds, which actions drastically extended the scope of the injury inflicted and the number of victims injured." *Id.* According to Appellants, during the course of Vega's undercover investigation, he assisted in the formation and operation of business entities used in furtherance of the scheme. Appellants further claim that Vega and the FBI "profited financially from [Vega's] participation in the crimes which he was investigating," including by acquiring an ownership interest in one of the entities used in the scheme. *Id.*

Count One of Appellants' complaint asserts claims for fraud based on misrepresentations Vega allegedly made to Appellants during his involvement in the scheme and on Vega's assistance in forming and operating entities used in the scheme. Count Two of the complaint alleges that Vega negligently failed to avoid unnecessary harm to Appellants and that the FBI negligently hired and supervised Vega.

The United States moved to dismiss Appellants' complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The United States argued that Appellants' claims were barred by the discretionary function and misrepresentation exceptions to the general waiver of sovereign immunity under the FTCA, *see* 28 U.S.C.A. § 2680(a), (h), and that Appellants had failed to allege conduct by the United States that would create liability under state law if committed by a private person, *see* 28 U.S.C.A. § 1346(b)(1). In support of its dismissal motion, the United States submitted the Declaration of John A. Johnson, a Supervisory Special Agent of the FBI and Unit Chief of the Undercover and Sensitive Operations Unit at FBI Headquarters in Washington, D.C. Attached to that declaration was a copy of the Attorney General's Guidelines on FBI Undercover Operations ("Undercover Guidelines"), which were in effect at the time of Vega's investigation.[2]

---

[2]We have held that "[i]n ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

The district court granted the United States' motion to dismiss. First, focusing on the misrepresentations that Vega allegedly made to Appellants, the district court held that Appellants' fraud claims were barred by the misrepresentation exception under the FTCA. Second, the district court held that Appellants' negligence claims failed because "under North Carolina law, a private person could not be liable for negligently conducting or supervising an undercover criminal investigation." J.A. 52. The district court did not address the United States' argument that all of Appellants' claims were barred by the discretionary function exception.

## II.

We review the dismissal of an action for lack of subject matter jurisdiction de novo. *See Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005), *cert. denied*, 2006 WL 452483 (U.S. Feb. 27, 2006) (No. 05-529). In so doing, "[w]e are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record." *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005). Here, we decline to consider whether the grounds for dismissal relied on by the district court were proper because the record presents a more straightforward basis for affirmance, namely, that Appellants' claims are barred by the discretionary function exception.[3]

The FTCA creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law. *See* 28 U.S.C.A. § 1346(b)(1). This waiver of sovereign immunity, however, is subject to several exceptions. "The most important of these . . . is the discretionary function exception," *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc), *cert. denied*, 125 S. Ct. 1828 (2005), which provides that the United States is not liable for "[a]ny claim . . . based upon the exer-

---

[3]Although Appellants contend that the discretionary function exception does not apply to the conduct alleged here, they recognize that the applicability of this exception is "the core issue in this case." Br. of Appellants at 6.

cise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused," 28 U.S.C.A. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). Congress enacted this exception "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . [and] to protect the Government from liability that would seriously handicap efficient government operations." *Id.* at 814 (internal quotation marks omitted).

To determine whether conduct by a federal agency or employee fits within the discretionary function exception, we must first decide whether the challenged conduct "involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *see id.* (explaining that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive"). If the conduct does involve such discretionary judgment, then we must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield," *i.e.*, whether the challenged action is "based on considerations of public policy." *Id.* at 536-37. This inquiry focuses "not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Thus, "a reviewing court in the usual case is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 720-21 (4th Cir. 1993). Moreover, when a statute, regulation, or agency guideline permits a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Applying these principles here, we first conclude that Vega's participation in, and the FBI's approval of, criminal activity during the undercover investigation involved an element of judgment or choice. Agent Johnson's declaration notes that "[t]here is no statute, regulation, or policy directive that mandates that the FBI choose to employ[ ] any particular investigative technique in carrying out [fraud and money laundering] investigations"; rather, "the FBI is vested with broad discretionary power to determine whether a particular investigative technique, such [as] an undercover operation, is an appropriate means by which to conduct these types of investigations." J.A. 23. Indeed, Appellants concede that, in general, "undercover operations are necessarily discretionary in nature and hence immune from civil liability." Br. of Appellants at 6; *see id.* at 13 (recognizing that "the nature of undercover operations demands the exercise of discretion"). They contend, however, that the FBI exceeded its discretionary authority by participating in the crimes it was investigating. We disagree.

The Undercover Guidelines grant the FBI broad discretion in conducting undercover operations. They generally authorize the FBI to conduct undercover operations "that are appropriate to carry out its law enforcement responsibilities." J.A. 30. More specifically, the guidelines permit FBI officials to authorize, and agents to engage in, a wide range of activities in connection with undercover investigations—including "[a]ctivity that is proscribed by Federal, state, or local law as a felony or that is otherwise a serious crime," or that presents "a significant risk of financial loss." *Id.* at 34-35. It is therefore clear that the conduct alleged by Appellants falls within the scope of the discretionary authority conferred on the FBI by the Undercover Guidelines.[4]

We further conclude that the challenged conduct was "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. The

---

[4]Agent Johnson's declaration confirms that the undercover operation at issue here received all necessary review and approval by FBI officials and that the conduct alleged by Appellants "fall[s] within the wide range of conduct, activities, and undercover scenarios which the FBI has discretion to utilize in furtherance of an undercover operation, pursuant to the authority of the Guidelines." *Id.* at 25.

FBI's decision whether, as part of its investigation, to participate in criminal activity likely to result in financial loss to third parties "is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721. Indeed, the Undercover Guidelines expressly confirm this understanding, requiring FBI officials to "weigh the risks and benefits" of a proposed undercover operation, "giving careful consideration" to several policy-based factors, including "[t]he risk of . . . financial loss to persons or businesses" and "[t]he risk that individuals engaged in undercover operations may become involved in illegal conduct." J.A. 30. As Agent Johnson explains, FBI officials consider these factors in "mak[ing] discretionary judgments and authoriz[ing] the operations that advance an investigation while minimizing the risks."[5] *Id.* at 25.

We thus conclude that the conduct alleged by Appellants falls within the discretionary function exception, thereby barring their suit against the United States.[6] We note that our holding is consistent with the decisions of two other circuits that have applied the discretionary function exception in similar cases. *See Ga. Cas. & Sur. Co. v. United States*, 823 F.2d 260, 263 (8th Cir. 1987) (holding that a claim for financial losses arising from the FBI's undercover investigation of an automobile theft ring was barred because "[t]he FBI's decision to maintain secrecy . . . involved the balancing of policy considerations

---

[5]The Undercover Guidelines impose various restrictions on agents' participation in otherwise illegal activity. For example, involvement in such activity may be authorized only for limited purposes, such as to obtain critical evidence not otherwise available or to establish credibility of a cover identity. Agents also may not participate in acts of violence except in self-defense. Further, FBI officials contemplating proposed undercover operations involving "sensitive circumstances"—such as participation in otherwise criminal activity—must "determine whether adequate measures have been taken to minimize the incidence of sensitive circumstances and reduce the risks of harm and intrusion that are created by such circumstances." *Id.* at 35-36.

[6]We also conclude that Appellants' claim that the FBI negligently hired and supervised Vega is barred by the discretionary function exception. Courts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1001-02 (9th Cir. 2000); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997).

protected by the discretionary function exception"); *see also Frigard v. United States*, 862 F.2d 201, 203 (9th Cir. 1988) (per curiam) (holding that a suit alleging financial fraud by an investment company used by the CIA as a cover for its operations was barred by the discretionary function exception because "the alleged decisions by the CIA to use [the company] and to keep its use of the company secret are administrative decisions grounded in social and economic policy"). We agree with the core principle articulated by the Eighth and Ninth Circuits—that discretionary, policy-based decisions concerning undercover operations are protected from civil liability by the discretionary function exception, even when those decisions result in harm to innocent third parties. Imposing liability for such decisions "would seriously handicap" the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress. *Varig Airlines*, 467 U.S. at 814 (internal quotation marks omitted). "Were we to permit this suit to succeed, we would stymie the very purpose of the discretionary function exception by permitting the second-guessing of policy through a tort action." *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995). While we are not unsympathetic to the financial losses suffered by Appellants, we must apply the discretionary function exception as we believe Congress intended it. *See Ga. Cas. & Sur.*, 823 F.2d at 263 ("While we acknowledge the harm to innocent [third parties] in this case, we cannot ignore congressional intent to protect the Government from suit through the discretionary function exception.").

III.

For the reasons set forth above, we affirm the district court order dismissing Appellants' action for lack of subject matter jurisdiction.

*AFFIRMED*