PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE PINEY RUN PRESERVATION
ASSOCIATION,

    *Plaintiff-Appellant,*

v.

THE COUNTY COMMISSIONERS OF
CARROLL COUNTY, MARYLAND,

    *Defendant-Appellee.*

No. 07-1348

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:06-cv-03019)

Argued: January 29, 2008

Decided: April 23, 2008

Before GREGORY and SHEDD, Circuit Judges, and Patrick M.
DUFFY, United States District Judge for the District of South
Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Shedd wrote the opinion, in
which Judge Gregory and Judge Duffy joined.

---

## COUNSEL

**ARGUED:** Guerdon Macy Nelson, Towson, Maryland, for Appel-
lant. Linda S. Woolf, GOODELL, DEVRIES, LEECH & DANN,
L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Paul N.

DeSantis, Towson, Maryland, for Appellant. K. Nichole Nesbitt, Joseph B. Wolf, GOODELL, DEVRIES, LEECH & DANN, L.L.P., Baltimore, Maryland, for Appellee.

## OPINION

SHEDD, Circuit Judge:

Piney Run is a small stream with its headwaters near the border of Carroll and Baltimore counties in Maryland. For the second time, the Piney Run Preservation Association ("the Association") has filed a citizen suit under the Clean Water Act ("CWA" or "the Act") alleging that the County Commissioners of Carroll County ("the County") are violating the CWA by discharging treated wastewater (*i.e.*, effluent) from the Hampstead Wastewater Treatment Plant ("the Plant") into Piney Run. The Association specifically contends that the temperature of the discharged effluent at times exceeds the thermal limitation set forth in the County's National Pollutant Discharge Elimination System ("NPDES") permit.[1] On the County's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the district court found that the Maryland Department of the Environment ("MDE") was "diligently prosecuting" a CWA enforcement action against the County for violating the Permit; consequently, the court

---

[1]The prior CWA litigation between these parties also centered on the temperature of the Plant's discharged effluent. In that case, the district court held that although the County's permit (as it then existed) did not contain a thermal limitation, the County was nonetheless liable under the CWA. Consequently, the court enjoined the County from further CWA violations and assessed civil penalties of $400,000 against it. We vacated the judgment on appeal, concluding (*inter alia*) that the County did not violate the CWA because it "complied with the discharge limitations and reporting requirements of [its] permit" and its effluent discharges "were within the reasonable contemplation of the permitting authority at the time the permit was issued." *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 268 F.3d 255, 259 (4th Cir. 2001), *cert. denied*, 535 U.S. 1077 (2002). As we explain below, the County's permit has been modified since that time to include a thermal limitation for the Plant's discharged effluent.

held that the Association was barred by 33 U.S.C. § 1365(b)(1)(B) from maintaining this suit.[2] The Association now appeals the order of dismissal, arguing that the district court erred in its "diligent prosecution" determination. We affirm.

I

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. "To serve those ends, the Act prohibits 'the discharge of any pollutant by any person' unless done in compliance with some provision of the Act." *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102 (2004) (*quoting* 33 U.S.C. § 1311(a)). One such provision, codified at 33 U.S.C. § 1342, "established a National Pollution Discharge Elimination System . . . that is designed to prevent harmful discharges into the Nation's waters." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2525 (2007). "Generally speaking, the NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *Miccosukee Tribe*, 541 U.S. at 102. An NPDES permit "defines, and facilitates compliance with, and enforcement of, a preponderance of a discharger's obligations under the [Act]." *EPA v. California ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 205 (1976). "The Environmental Protection Agency (EPA) initially administers the NPDES permitting system for each State, but a State may apply for a transfer of permitting authority to state officials. If authority is transferred, then state officials . . . have the primary responsibility for reviewing and approving NPDES discharge permits, albeit with continuing EPA oversight." *Nat'l Ass'n of Home Builders*, 127 S. Ct. at 2525 (citations omitted). The State of Maryland is authorized to administer the NPDES program and does so through MDE. *See Piney Run Pres. Ass'n*, 268 F.3d at 265.

---

[2]Section 1365(b)(1)(B) provides that a citizen suit may not be maintained if the government enforcement agency "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right."

"Although the primary responsibility for enforcement rests with the state and federal governments, private citizens provide a second level of enforcement and can serve as a check to ensure the state and federal governments are diligent in prosecuting Clean Water Act violations." *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 637 (6th Cir. 2007). Specifically, § 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes citizens "to bring suit against any NPDES permit holder who has allegedly violated its permit." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 152 (4th Cir. 2000) (en banc). We have recognized that this citizen suit provision is "critical" to the enforcement of the CWA, *see id.*, as it allows citizens "to abate pollution when the government cannot or will not command compliance," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 62 (1987). However, citizen suits are meant "to supplement rather than to supplant governmental action," *id.* at 60, and the CWA — specifically § 1365(b)(1)(B) — "bars a citizen from suing if the EPA or the State has already commenced, and is 'diligently prosecuting,' an enforcement action," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000). This "statutory bar is an exception to the jurisdiction granted in subsection (a) of § 1365, and jurisdiction is normally determined as of the time of the filing of a complaint." *Chesapeake Bay Found. v. American Recovery Co.*, 769 F.2d 207, 208 (4th Cir. 1985).

II

As we explained in the prior CWA litigation between these parties, MDE has classified Piney Run as a Class III-P stream, meaning that it is protected as a source of public drinking water and as a body capable of supporting a self-sustaining trout population. The Plant is subject to the CWA and since 1975 has operated under a series of NPDES permits granted by MDE, the most recent one having been issued in 1990. That permit contains express limitations on the amount of certain pollutants that the Plant can discharge, but heat — which is a statutory pollutant — was not originally listed in it. *See Piney Run Pres. Ass'n*, 268 F.3d at 260-61.

In March 2000, as part of ongoing administrative litigation involving the Plant, MDE modified the County's permit to include a thermal

limitation for the Plant's discharged effluent and procedures for measuring ambient conditions in Piney Run. The thermal limitation provides that the effluent cannot exceed the higher of 20°C or the ambient temperature of the stream. Following contested proceedings before an administrative law judge, the modified permit became effective in early 2004. Several months later, the County applied to MDE for an alternate effluent level ("AEL") — *i.e.*, a less stringent temperature restriction — and submitted a Study Plan for Alternate Effluent Limitation for MDE's review.[3] During the pendency of this application, the County has provided MDE with supplemental reports and appears to have cooperated with MDE. MDE has not yet made a final determination on this application.

Apart from its AEL application, the County petitioned the state circuit court for review of MDE's decision to modify the 1990 permit. The County also moved to stay enforcement of the modified permit pending the outcome of the petition for review. In turn, MDE filed a complaint seeking injunctive relief and civil penalties against the County for, *inter alia*, violating the thermal limitation in the modified permit ("the MDE enforcement action"). Eventually, the circuit court denied the County's petition for judicial review, but it stayed enforcement of the modified permit until a final decision was rendered on the County's petition for review or November 20, 2005, whichever came first. In light of the circuit court's stay of enforcement of the modified permit and the County's appeal of the denial of its petition for review, MDE and the County jointly moved the circuit court to stay the MDE enforcement action until the stay of the modified permit was lifted. The circuit court granted the joint motion and stayed the MDE enforcement action. On November 20, 2005, the stay of enforcement

---

[3]The applicable regulation provides:

> Thermal discharge effluent limitations or standards established in permits may be less stringent than those required by applicable standards and limitations if the discharger demonstrates to the satisfaction of the Department that the effluent limitations or standards are more stringent than necessary to assure the protection and propagation of a balanced, indigenous community of shellfish, fish, and wildlife in and on the body of water into which the discharge is made.

Md. Code Regs. 26.08.03.03E(1).

of the modified permit expired, and that permit again became effective. Subsequently, MDE's final decision modifying the permit was judicially affirmed.[4]

In July 2006, MDE and the County entered into a Consent Judgment in the MDE enforcement action reflecting their "agreement as to appropriate long-term and interim measures to insure compliance with the Permit." J.A. 373. The circuit court entered the Consent Judgment on July 25, 2006, and its terms became the order of the circuit court. *See Long v. State of Md.*, 807 A.2d 1, 7 (Md. 2002) (noting that consent judgments have the same force and effect as other judgments).

The Consent Judgment initially mandates that upon its effective date, the County "shall achieve compliance with the thermal effluent limitations" set forth in the modified permit. J.A. 374. It also provides that in settlement of all violations of the thermal limitation that occurred between November 20, 2005, and July 25, 2006, the County would pay a civil penalty of $500 for each day that a violation occurred. Pursuant to this provision, the County paid penalties in the amount of $13,500.

---

[4]The primary point of contention concerning the appropriate thermal limitation centers on the effect of the discharged effluent on the Piney Run trout population, and the parties dispute that effect. According to the County, the Plant's purification process does not involve heating the effluent; rather, it consists of biological and ultraviolet light treatment. Nonetheless, at times the ambient temperature of outdoor air and sunlight exposure can affect both the temperature of the stream and of the effluent before it is discharged. When this occurs, the daytime temperature of the stream often exceeds the effluent; however, at night, the stream cools faster than the stored effluent, causing the effluent to exceed the ambient temperature of the stream. Interestingly, in affirming the administrative decision to modify the permit, the Maryland Court of Special Appeals noted that the administrative law judge found "that there was no evidence the Plant's discharge had any adverse effect on aquatic life that naturally occurring conditions would not have" and that he also indicated that "the discharge may even have a positive effect on the trout population." *Cty. Comm'rs of Carroll Cty. v. Rowland*, No. 2338, at 30 (Md. Ct. Spec. App. 2006) (J.A. 415).

Prospectively, the Consent Judgment also imposes stipulated civil penalties of $500 for each day that the County fails to: (1) comply with the thermal limitation of the modified permit; (2) meet any requirement or complete any required work, plan, or report; or (3) adhere to any required milestone date or schedule. In recognition of the County's AEL request and implementation of an AEL study, the Consent Judgment provides that the stipulated penalties automatically begin to accrue on the day after performance by the County is due or the day a violation occurs, whichever is applicable, and will continue to accrue until the County satisfactorily completes performance or the violation ceases. If MDE approves an AEL and that approval is thereafter challenged, then stipulated penalties will continue to accrue; however, if a final judgment is entered approving an AEL, then stipulated penalties for events that do not exceed the AEL will not be assessed by MDE. Conversely, if an AEL is ultimately disapproved, then stipulated penalties from November 20, 2005, to the date of the final AEL judgment will become due and payable within 30 days from the final judgment date. Additionally, upon final disapproval of an AEL, the County will be required to submit to MDE a plan identifying the measures needed to comply with the thermal limit of the modified permit, and the County will thereafter have 270 days to implement those measures.[5] During that 300-day period, stipulated penalties will continue to accrue for violations of the thermal limitation.

The Consent Judgment also requires the County to implement a multi-phase Environmental Project ("EP") to "mitigate any water temperature increases caused by storm water runoff or modifications to stream buffers in the Piney Run watershed," J.A. 376, and it imposes on the County various obligations and deadlines associated with the EP. According to MDE, "implementation of the EP may result in reduced temperature impacts and related environmental benefits to the Piney Run watershed." J.A. 268.

---

[5]In the event that an AEL is disapproved, it appears that the County's planned means of compliance with the thermal limitation is the installation of mechanical chillers that will cool the effluent before its discharge. The County has been reluctant to utilize chillers based on its concerns that the chillers will impact the area's air and water quality and will cause noise pollution.

In late August 2006, the Association's counsel notified the County and MDE by letter of its intent to file a citizen suit to seek enforcement of the thermal limitation in the modified permit. The Association thereafter filed this lawsuit in November 2006. The County responded by moving under Rule 12(b)(1) for dismissal, arguing that the Association is barred from maintaining a citizen suit because the MDE enforcement action constitutes diligent prosecution within the meaning of § 1365(b)(1)(B). The district court granted the motion and dismissed the case, finding "that the consent judgment (even though it does not mandate installation of the chillers that are plaintiff's preferred remedy) and its implementation comfortably come within the relevant standards of 'diligent prosecution.'" J.A. 765.

## III

We review *de novo* a dismissal under Rule 12(b)(1). *Suter v. United States*, 441 F.3d 306, 310 (4th Cir.), *cert. denied*, 127 S. Ct. 273 (2006).[6] The Association, as plaintiff, bears the burden of proving that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). For purposes of this case, this means that the Association bears the burden of proving that MDE has not diligently prosecuted the County's violations of the thermal limitation set forth in the modified permit. A CWA enforcement prosecution will ordinarily be considered "diligent" if the judicial action "is capable of requiring compliance with the Act and is in good faith calculated to do so," and as the Association acknowledges in its opening brief, diligence is presumed. *See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 760 (7th Cir. 2004), *cert. denied*, 544 U.S. 913 (2005); *see also Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007) ("Citizen-plaintiffs must meet a high standard to demonstrate that [a government agency] has failed to prosecute a violation diligently."). This presumption "is due not only to the intended role of the [government] as the primary enforcer of the [CWA], but also to the fact that courts are not in the business of designing, constructing or maintaining sewage treatment systems." *Friends of Milwaukee's Rivers*, 382 F.3d at 760 (citation omitted).

---

[6]When presented with a Rule 12(b)(1) motion, district courts are permitted to consider materials outside the pleadings, *Suter*, 441 F.3d at 309 n.2, and the parties presented such materials in this case.

"Section 1365(b)(1)(B) does not require government prosecution to be far-reaching or zealous. It requires only diligence." *Karr*, 475 F.3d at 1197. Thus, a citizen-plaintiff cannot overcome the presumption of diligence merely by showing that the agency's prosecution strategy is less aggressive than he would like or that it did not produce a completely satisfactory result. *Id.* Moreover, the fact that an agency has entered into a consent decree with a violator that establishes a prospective schedule of compliance does not necessarily establish lack of diligence. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318 (1982) (noting that "enforcement actions typically result, by consent or otherwise, in a remedial order setting out a detailed schedule of compliance designed to cure the identified violation of the Act" (internal quotation marks omitted)). Indeed, when presented with a consent decree we must be particularly deferential to the agency's expertise, and we "should not interpret § 1365 in a manner that would undermine the [government's] ability to reach voluntary settlements with defendants." *Karr*, 475 F.3d at 1198. As the Supreme Court has recognized: "If citizens could file suit . . . in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably." *Gwaltney*, 484 U.S. at 61.

The Association argues generally that the district court erred in concluding that MDE has diligently prosecuted the County's CWA violations "because the Consent Judgment . . . provided a benefit to [the] County and failed to ensure that violations would not continue." *Brief of Appellant*, at 18-19. As we have noted, a CWA enforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so. Based on the record before us, we hold that the Association has failed to meet its high burden of establishing that the MDE enforcement action does not satisfy this standard.

In reaching this conclusion, we initially note that it cannot seriously be said that the MDE enforcement action is incapable of requiring compliance with the Act. Indeed, the evidence establishes the contrary. MDE modified the County's permit in 2000 to include the thermal limitation, and the modified permit only became effective in 2004 at the conclusion of contested administrative proceedings. Before then, the County's discharge of effluent did not violate the

terms of its NPDES permit. *See Piney Run Pres. Ass'n*, 268 F.3d at 259. Within several months of the effective date of the modified permit, MDE filed the enforcement action seeking, *inter alia*, injunctive relief requiring the County "to take all steps necessary to comply with all terms and conditions of its NPDES permit, including but not limited to the limitation on temperature." J.A. 325. Although the MDE enforcement action was stayed pending resolution of the County's petition for review of MDE's decision to modify the permit, it culminated in the Consent Judgment. Under the terms of the Consent Judgment, the County is required to comply with the thermal limitation of the modified permit and is subject to monetary penalties for failing to do so. In light of these facts, the MDE enforcement action surely is capable of requiring the County to comply with the Act.

The real question raised by the Association is whether the MDE enforcement action, and specifically the Consent Judgment, is in good faith calculated to require the County's compliance with the Act.[7] In challenging the motivation underlying the MDE enforcement action, the Association points to, *inter alia*, an alleged request by the County for MDE to file the enforcement action, the fact that the daily fine established in the Consent Judgment is lower than the fine imposed in the prior CWA litigation, and the fact that the Consent Judgment does not establish a final deadline for compliance. In our view, these matters simply do not establish a lack of diligence on MDE's part.

Even assuming that the County requested MDE to pursue the enforcement action, "there is no incompatibility whatever between a defendant's facilitation of suit and the State's diligent prosecution — as prosecutions of felons who confess their crimes and turn themselves in regularly demonstrate." *Laidlaw Envtl. Servs.*, 528 U.S. at 211 n.4 (Scalia, J., dissenting).[8] Moreover, to the extent that the now-

---

[7]The Association argues that the presumption of diligence arising from an agency enforcement action can be rebutted "upon a showing that the agency has engaged in a pattern of conduct in its prosecution that could be considered dilatory, collusive or otherwise in bad faith." *Brief of Appellant*, at 21-22 (internal quotation marks omitted).

[8]Although Justice Scalia's dissenting opinion discussed the merits of the diligent prosecution question, the *Laidlaw* majority did not decide the

vacated prior fine is relevant, MDE's agreement to accept a lower daily fine in the Consent Judgment appears to be nothing more than a concession on the part of MDE in exchange for other obligations (*e.g.*, the EP) that are imposed on the County. As we have noted, this is precisely the type of discretionary matter to which we should defer. Finally, the Association's complaint about the absence of a final compliance deadline in the Consent Judgment is unavailing for at least two reasons. First, the Consent Judgment requires the County's immediate compliance with the thermal limitation and imposes a daily fine for its violations. Second, the open-ended nature of the Consent Judgment reflects the fact that the County is lawfully seeking an AEL through the state administrative process. Depending on the outcome of that process, the County's obligations under the Consent Judgment may change significantly and may include not only payment of any accrued fines but installation of the mechanical chillers. Without legitimate evidence that MDE had no intention of acting responsibly on the County's AEL application, we have no basis to impute an improper motive to MDE in this regard.

IV

Based on the foregoing, we affirm the district court's order of dismissal.

*AFFIRMED*

---

issue. Notably, however, the allegation that Laidlaw played a role in facilitating the enforcement action involved more than a mere request that the agency file suit; instead, as the majority noted, the district court found that "Laidlaw drafted the state-court complaint and settlement agreement, filed the lawsuit against itself, and paid the filing fee." 528 U.S. at 178 n.1 (internal quotation marks omitted).