PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA; CONTINENTAL
INSURANCE COMPANY; BALTIMORE
HARBOR SHUTTLE, LLC, d/b/a
Seaport Taxi; NATIONAL HISTORIC
SEAPORT OF BALTIMORE,
INCORPORATED; LIVING CLASSROOMS
FOUNDATION, INCORPORATED,

    *Plaintiffs-Appellants,*

    v.

UNITED STATES OF AMERICA,

    *Defendant-Appellee.*

No. 08-2148

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:06-cv-00422-WDQ)

Argued: May 13, 2009

Decided: June 25, 2009

Before DUNCAN, Circuit Judge, HAMILTON, Senior
Circuit Judge, and Malcolm J. HOWARD, Senior United
States District Judge for the Eastern District of North
Carolina, sitting by designation.

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Duncan and Senior Judge Howard joined.

---

## COUNSEL

**ARGUED:** Robert Hopkins, DUANE MORRIS, LLP, Baltimore, Maryland, for Appellants. Stephen Robert Campbell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Susan M. Euteneuer, DUANE MORRIS, LLP, Baltimore, Maryland; George R. Zacharkow, Faust Mattioni, MATTIONI, LTD., Philadelphia, Pennsylvania, for Appellants. Michael F. Hertz, Acting Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Robert E. Kelly, UNITED STATES DEPARTMENT OF JUSTICE, Torts Branch, Civil Division, Washington, D.C., for Appellee.

---

## OPINION

HAMILTON, Senior Circuit Judge:

The present civil action stems from the capsizing in the Baltimore Harbor of a double-pontoon vessel called the "Lady D," resulting in the death of five persons thrown overboard and numerous injuries to others on board (the Accident). Prior to the Accident, the United States Coast Guard (the Coast Guard) had certified the Lady D to carry no more than twenty-five persons, based upon the results of a stability proof test performed on a sister vessel called the Fells Point Princess. After the Accident, the Coast Guard's retesting of the Fells Point Princess established that such vessel should have been certified to carry no more than fifteen persons.

After the owners and operators of the Lady D settled the personal injury and death claims flowing from the accident, the owners and operators of the Lady D and their insurers (collectively Plaintiffs) filed the present civil action against the United States of America (the Government) under the Suits in Admiralty Act (SIAA), 46 U.S.C. §§ 30901-30918[1], and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. In such action, Plaintiffs have alleged causes of action for negligence, negligent misrepresentation, contribution, indemnity, equitable subrogation, and violations of the Good Samaritan Doctrine. Plaintiffs initially based each cause of action upon two actions of the Coast Guard: (1) the Coast Guard's waiver of the Lady D undergoing its own stability proof test (the Failure to Test Error); and (2) negligence in the performance of the original stability proof test on the Fells Point Princess (the Underlying Testing Error). Upon the Government's motion, the district court dismissed Plaintiffs' civil action *in toto* for lack of subject matter jurisdiction on the basis that the entire action was barred by the discretionary function exception to the Government's respective waivers of sovereign immunity under the SIAA and the FTCA.

On appeal, Plaintiffs challenge the district court's dismissal of their action to the extent their causes of action are premised on the Underlying Testing Error. Plaintiffs expressly do not challenge the district court's dismissal of their action to the extent their causes of action are premised upon the Failure to Test Error. For reasons that follow, we affirm the district court's dismissal of Plaintiffs' action for lack of subject matter jurisdiction.

## I.

The Lady D weighed approximately two gross tons and measured thirty-six feet in length. Construction of the Lady D

---

[1] Prior to October 6, 2006, the SIAA was cited as 46 U.S.C. app. §§ 741-752.

began in 1995. The Coast Guard inspected the Lady D's pontoons in November 1995.[2] The Coast Guard also conducted a dry-dock inspection on the nearly completed Lady D on March 18, 1996. In accordance with the authority and discretion provided under the then applicable administrative regulations and guidance, the Coast Guard's Officer in Charge for Marine Inspection deemed the Lady D a sister vessel of the Raven and waived the requirement that the Lady D undergo its own stability proof test before being issued a Certificate of Inspection. 46 C.F.R. § 170.175 (1996); 46 C.F.R. § 175.400 (1996); 46 C.F.R. § 178.115 (1996). The Raven's stability proof test, in turn, had been waived based upon its sister ship status with the Fells Point Princess a/k/a the Patricia P.

The Coast Guard had performed the original stability proof test upon the Fells Point Princess in 1992. The record on appeal contains the deposition testimony of Charles Collins (Inspector Collins), the Coast Guard inspector who was in charge of conducting the stability proof test on the Fells Point Princess in 1992. Inspector Collins testified that, in conducting the transverse stability portion of such test, he "did not move the weight to the extreme outboard position," (J.A. 182), as "recommended" by the Marine Safety Manual for conducting a stability proof test on a pontoon-type small passenger vessel, (J.A. 202). Instead, for that singular portion of the test, Inspector Collins testified that he inadvertently applied the weight-shift procedure used for a monohull vessel. As a result, the stability calculations for the Fells Point Princess were inaccurate.[3]

The Coast Guard issued a Stability Letter for the Lady D on March 29, 1996, "deem[ing it] to have satisfactory stability

---

[2]By statute, the Coast Guard is charged with inspecting small passenger vessels like the Lady D. *See* 46 U.S.C. § 3301(8).

[3]As previously stated, stability testing of the Fells Point Princess conducted after the Lady D capsized showed that the Fells Point Princess could only qualify to be certified to carry no more than fifteen persons.

for passenger service under reasonable operating conditions for the carriage of not more than 25 total persons on protected waters." (J.A. 36). The record also contains a Certificate of Inspection for the Lady D, issued by the Coast Guard on February 28, 2002, with an expiration date five years later, certifying the Lady D to carry no more than twenty-five persons.

The Lady D operated in the Baltimore Harbor without incident until the Accident on March 6, 2004. On that day, the Lady D encountered a wind storm en route from Fort McHenry to Fells Point and capsized. At the time of the Accident, twenty-three passengers and two crew members were aboard the Lady D. A total of five persons perished and numerous others were injured. The Lady D also suffered physical damage.

At the time of the Accident, the owners and operators of the Lady D were Baltimore Harbor Shuttle, LLC, d/b/a Seaport Taxi, National Historic Seaport of Baltimore, Inc., and Living Classrooms Foundation, Inc.[4] Their insurers were Indemnity Insurance Company of North America and Continental Insurance Company. As previously stated, the owners and operators of the Lady D and their insurers have brought the present action.

## II.

On appeal, Plaintiffs seek reversal of the district court's dismissal of their action and a remand for further proceedings to the extent their causes of action are based upon the Underlying Testing Error of the Fells Point Princess in 1992. According to Plaintiffs, "[b]ut for the Underlying [Testing] Error, the Lady D would not have been certified as safe to carry 25 individuals, and the Accident would not have occurred." (Plaintiffs' Reply Br. at 3).

[4]On October 7, 2004, victims of the Accident settled all tort claims filed in a prior separate action against the owners and operators of the Lady D.

Plaintiffs contend that the Underlying Testing Error does not fall within the discretionary function exception to the Government's respective waivers of sovereign immunity under the SIAA and the FTCA, and therefore, the district court committed reversible error in dismissing their action to the extent their causes of action are based upon the Underlying Testing Error. In support, Plaintiffs argue, in relevant part, that "pursuant to Coast Guard policy between the 1960's and March 11, 1996 . . ., Coast Guard inspectors were not permitted to apply the Monohull Weight Shift in the test of a pontoon vessel, because to do so would be contrary to established scientific procedures of naval architectural and marine engineering and would provide invalid test results." (Plaintiffs' Opening Br. at 13).

Whether the Underlying Testing Error falls within the discretionary function exception is a narrow question, which we review *de novo*. *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Under the discretionary function exception to the Government's waiver of sovereign immunity under the FTCA, the Government is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Although the SIAA does not expressly contain a parallel exception to the Government's waiver of sovereign immunity under the SIAA, we have previously held that one implicitly exists by virtue of the constitutional doctrine of separation of powers. *McMellon v. United States*, 387 F.3d 329, 338 (4th Cir. 2004) (*en banc*) (noting that the SIAA does not contain a statutory exception from suit for discretionary functions, but holding that such an exception nonetheless implicitly exists by virtue of the constitutional doctrine of separation of powers).

Notably, Plaintiffs bear the burden of proving that the discretionary function exception does not apply to the Underly-

ing Testing Error. *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005). If the discretionary function exception does apply, the district court must dismiss the affected claims for lack of subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304-05 (4th Cir. 1995) (federal court lacks subject matter jurisdiction if discretionary function exception applies).

"To determine whether conduct by a federal agency or employee fits within the discretionary function exception, we must first decide whether the challenged conduct 'involves an element of judgment or choice.'" *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536.

If we determine that the challenged "conduct does involve such discretionary judgment, then we must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' *i.e.*, whether the challenged action is 'based on considerations of public policy.'" *Suter*, 441 F.3d at 311 (quoting *Berkovitz*, 486 U.S. at 536-37). Critical to proper analysis, this inquiry focuses "not on the agent's subjective intent in exercising the discretion . . ., but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Thus, "in the usual case" a court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). "Moreover, when a statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's acts are

grounded in policy when exercising that discretion.'" *Suter*, 441 F.3d at 311 (quoting *Gaubert*, 499 U.S. at 324).

Application of the legal principles just outlined reveals that Plaintiffs' appeal is without merit. First, the Marine Safety Manual was the only administrative guidance on the subject of conducting a stability proof test on pontoon-type small passenger vessels such as the Lady D and the Fells Point Princess in existence in 1992 when the Coast Guard conducted its stability proof test on the Fells Point Princess, and such manual did not set forth a mandatory testing methodology. Rather, the Marine Safety Manual only set forth a *recommended* testing methodology. In relevant part, the Marine Safety Manual provided:

> *Pontoon Type Vessels*. Figures 6-2 and 6-3 **outline the recommended procedures** for a stability proof test for pontoon-type small passenger vessels under 65 feet in length and restricted to protected waters. . . . **A proof test is to be used** when the number of pontoons does not exceed two.

(J.A. 97) (bold emphasis added). Because the testing methodology for conducting a stability proof test on a pontoon-type small passenger vessel, such as the Fells Point Princess, was only *recommended* at the time the Coast Guard performed the stability proof test on the Fells Point Princess, logic dictates that the Coast Guard was permitted to use its discretion in how it conducted such test. Indeed, the Marine Safety Manual makes such discretionary authority clear by stating in a preceding portion of the manual that "the policies and guidance issued herein are intended as a guide for the consistent and uniform execution of the marine safety program, without undue restriction of independent judgment and action on the part of marine safety personnel." (J.A. 333). Thus, with respect to the first inquiry prescribed by the applicable discretionary function analysis, we hold that the Coast Guard possessed discretion in conducting the stability proof test on the

Fells Point Princess and certifying it to carry no more than twenty-five persons.

We so hold despite the Marine Safety Manual's statement that: "A proof test is to be used when the number of pontoons does not exceed two." (J.A. 97). Focusing on the word "is," Plaintiffs seize upon this sentence to argue that the procedures outlined in Figures 6-2 and 6-3 of the Marine Safety Manual are mandatory. It is a particular weight-shifting step set forth in Figure 6-2 that Plaintiffs contend the Coast Guard improperly performed in conducting the stability proof test on the Fells Point Princess in 1992. Plaintiffs' argument is without merit for two reasons. First, language in the same paragraph as the sentence upon which Plaintiffs seize expressly states that the "procedures for **a** stability proof test for pontoon-type small passenger vessels under 65 feet in length and restricted to protected waters," as outlined in Figures 6-2 and 6-3, are only "recommended." (J.A. 97) (emphasis added). Second, the use of the indefinite article "a" at the beginning of the sentence upon which Plaintiffs seize means that such sentence does not specify a particular stability proof test. In sum, the answer to the first inquiry of the applicable discretionary function analysis favors the Government.

Having determined that the challenged conduct involves discretionary judgment, we must next determine whether the challenged conduct is "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. We hold in favor of the Government on this inquiry also. We do so because, "[w]hen," as here, "established governmental policy, as expressed or implied by . . . agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion," *Gaubert*, 499 U.S. at 324, and Plaintiffs have put forward no evidence to carry their burden of showing that, in certifying the number of persons a vessel can carry (based in part upon the results of a stability proof test), the Coast Guard's acts are not grounded in considerations of public policy.

Moreover, the fact that Inspector Collins characterized his failure to shift the weight to the extreme outboard position in conducting the stability proof test on the Fells Point Princess in 1992 as a mistake, as opposed to an exercise in judgment, is of no moment in our analysis. This is because, according to the Supreme Court, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. With respect to inspecting pontoon-type small-passenger vessels, the Coast Guard inspector's judgment concerning the application of inspection standards based on the intended use of the vessel is the type of policy decision the discretionary function exception is designed to protect. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 514-15 (7th Cir. 1995) (judgments made by Coast Guard employees in conducting vessel inspections "require balancing considerations of safety and economics with reference to the needs and uses of the particular vessel being inspected").

This situation is materially analogous to the aviation inspections at issue in *United States v. Varig Airlines*, 467 U.S. 797 (1984). In that case, the Supreme Court considered whether the Federal Aviation Administration's (FAA) system of spot-checking airplanes fell within the discretionary function exception. The Court held that not only was the FAA's creation of the spot-checking system discretionary, but so too were the acts of the FAA employees in executing the program since they had a range of discretion to exercise in deciding how to carry out the spot-check activity. *Id.* at 820.

Based upon the foregoing analysis, the district court was correct in holding that the discretionary function exception to the Government's respective waivers of sovereign immunity under the SIAA and the FTCA barred Plaintiffs' action against the Coast Guard to the extent Plaintiffs' causes of action are based upon the Underlying Testing Error. Accord-

ingly, we affirm the district court's dismissal of Plaintiffs' action for lack of subject matter jurisdiction.

*AFFIRMED*