Angela PIEPER, Individually and as Personal Representative of the Estate of Kristen Renee Hernandez, And All Similarly Situated Personal Representatives of Estates of Deceased Persons Whose Deaths Were Caused by Toxic Exposure On or Emanating From US Army Base Ft. Detrick; Wilfredo Hernandez; Emma Hernandez; Robert Andrew Thomas, III; Randy White; Louise Mason, On Her Own Behalf, and On Behalf of All Similarly Situated Persons Suffering From Diseases Caused by Toxic Exposure On or Emanating From US Army Garrison, Ft. Detrick; Brandon F. White, On His Own Behalf, and On Behalf of All Similarly Situated Persons Suffering From Fear of Diseases Caused by Toxic Exposure On or Emanating From US Army Garrison Ft. Detrick, Plaintiffs-Appellants,

v.

UNITED STATES of America, BY AND THROUGH Its Instrumentalities the DEPARTMENT OF DEFENSE, the U.S. Army And the U.S. Army Garrison Fort Detrick, Defendant-Appellee.

No. 16-2035

United States Court of Appeals, Fourth Circuit.

Argued: September 15, 2017

Decided: October 20, 2017

ARGUED: Michael Ray Hugo, HUGO & ASSOCIATES, PLLC, Framingham, Massachusetts, for Appellants. Christina Maria Falk, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. ON BRIEF: Christopher T. Nace, PAULSON & NACE, PLLC, Washington, D.C., for Appellants. Chad A. Readler, Acting Assistant Attorney General, J. Patrick Glynn, Director, Torts Branch, Civil

Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee.

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Current and former residents of Frederick, Maryland brought this suit under the Federal Tort Claims Act ("FTCA") for injuries they trace to the United States Army's waste disposal and remediation practices at Fort Detrick, an active base within Frederick's city limits. The residents' claim is twofold: First, they allege that the Army negligently disposed of trichloroethylene, tetrachloroethylene, and other hazardous chemicals at Fort Detrick. Second, they accuse the Army of failing to adequately remediate the resulting groundwater contamination. The plaintiffs sued the Army on behalf of themselves and others who have suffered personal injuries or death as a result of being exposed to this waste.

The United States moved to dismiss the case for lack of subject matter jurisdiction, arguing that the plaintiffs' claims were barred by the discretionary function exception to the FTCA, which protects government policy choices from lawsuits. The district court granted the motion and dismissed the case, relying on the two-step analysis established by the Supreme Court in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and applied by this court in *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006). The Army's waste disposal and remediation decisions fell within the discretionary function exception, the district court determined, because those decisions both involved an element of discretionary judgment and were susceptible to policy analysis. We agree with the district court and affirm its decision.

Fort Detrick was home to the Army's biological warfare program from World War II until President Nixon ended the program in 1969. From 1955 to the early 1970s, the Army disposed of trichloroethylene ("TCE"), tetrachloroethylene ("PCE"), and other hazardous chemicals by burying them in unlined pits in what is known as Area B-11 at Fort Detrick. As the district court has explained, this disposal method was standard industry practice at the time. *See Waverley View Inv'rs, LLC v. United States*, 79 F.Supp.3d 563, 565–66 (D. Md. 2015) (describing the Army's waste disposal practices at Fort Detrick). Indeed, by burying the waste in Area B, the Army acted in compliance with a regulatory directive that expressly approved such disposal. *See Pieper v. United States*, No. CCB-15-2457, 2016 WL 4240086, at *5 (D. Md. Aug. 11, 2016) (discussing Fort Detrick Regulation 385-1).

In 1974, the Army began monitoring groundwater conditions near Area B disposal areas, and in or around 1991, this effort detected TCE contamination. The following year, the Army began supplying nearby residents with an alternative water source. In 1997, the Army confirmed that PCE and TCE from the waste disposal pits in Area B-11 had contaminated groundwater under neighboring land. A 25-million-dollar removal action successfully reduced TCE and PCE concentrations in the groundwater, but further remediation was estimated at nearly a billion dollars and ultimately rejected as too costly. Instead, the Army installed protective caps to contain the waste, at a cost of 5.5 million dollars.

This case began when current and former residents of Frederick brought suit in federal court under the FTCA, contending that the Army was negligent both in its initial disposal of toxic materials and in its failure to fully correct the resulting contamination. The plaintiffs alleged that they and their family members had contracted (or feared contracting) cancer, autoimmune disorders, and other diseases—some of which proved fatal—from exposure to this waste.

The United States moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the court lacked subject matter jurisdiction to hear the case because the suit was barred under the discretionary function exception to the FTCA. To defeat the government's Rule 12(b)(1) motion, the plaintiffs had the burden of proving that subject matter jurisdiction existed. *Piney Run Pres. Ass'n v. Cty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008). In a careful and detailed opinion, the district court concluded that the plaintiffs could not meet that burden, and dismissed their suit for lack of subject matter jurisdiction. *See Pieper*, 2016 WL 4240086, at *4–6.

As the district court explained, the FTCA effects only a "limited waiver" of the federal government's sovereign immunity from suit. *Id.* at *3 (quoting *Molzof v. United States*, 502 U.S. 301, 305, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992)). Through the FTCA, the government has allowed itself to be sued for some tort claims, but not all, and the statute identifies several exceptions to its waiver of immunity. *See* 28 U.S.C. §§ 1346(b), 2680. The exception at issue in this case—the discretionary function exception—is designed to shield government policy decisions from lawsuits. *See Wood v. United States*, 845 F.3d 123, 131 (4th Cir. 2017) (explaining that allowing the threat of tort liability to shape

military policy is "exactly what the discretionary function exception seeks to avoid"). Specifically, under 28 U.S.C. § 2680(a), the United States retains its immunity from suit as to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Congress intended that exception to preclude liability for choices made by government officials who must exercise judgment on matters of "social, economic, and political policy." *Suter*, 441 F.3d at 310 (citation omitted). And as the district court recognized, because waivers of sovereign immunity must be strictly construed, an FTCA plaintiff bears the burden of proving that the government conduct in question does not fall within the discretionary function exception. *Pieper*, 2016 WL 4240086, at *3; *see also Wood*, 845 F.3d at 127.

This was not the district court's first application of the discretionary function exception to the Army's waste disposal and remediation practices at Fort Detrick. In an earlier FTCA suit challenging the same Army conduct at issue here – this one brought by the owner of adjacent land – the court dismissed a nearly identical complaint under the discretionary function exception. *See Waverley View*, 79 F.Supp.3d at 565. The *Pieper* plaintiffs filed suit in this case shortly after *Waverley View* was decided, raising the same basic factual and legal contentions. The district court's thorough opinion in *Waverley View* accordingly guided its decision in *Pieper*, *see* 2016 WL 4240086, at *4, and it is similarly instructive to this court's analysis.

In *Waverley View*, the district court began its analysis by setting out the two-step inquiry that determines whether government conduct falls within the discretionary function exception. 79 F.Supp.3d at 569;

*see Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954. The first question is whether the challenged conduct "involves an element of judgment or choice." 79 F.Supp.3d at 569 (quoting *Suter*, 441 F.3d at 310). Under that prong, the plaintiffs, to meet their burden, must show that the Army "lacked discretion regarding its waste management practices" at Fort Detrick because a "federal statute, regulation, or policy specifically prescribe[d] a course of action" it was to follow. *Id.* (citation omitted). Assuming the challenged conduct does involve judgment or choice, the second question is whether the plaintiffs can show that those judgments nevertheless fall outside the discretionary function exception because they are not "based on considerations of public policy" or "susceptible to policy analysis." *Id.* (citation omitted).

The district court in *Waverley View* then applied this two-step analysis to the same waste disposal and remediation practices challenged here by the *Pieper* plaintiffs. First, the court concluded that the plaintiff in *Waverley View* had failed to identify any specific, mandatory legal provision regarding either waste disposal or remediation that left the Army without the discretion to exercise judgment or choice. *Id.* at 570–74, 576–77. Indeed, the court questioned whether some of the provisions cited by the plaintiff created "mandatory" duties at all, or whether, read in context, they were "closer to statements of policy goals." *Id.* at 570. In any event, the court concluded that none was "sufficiently specific" to bind the Army to a particular course of conduct. *Id.* at 571. As to whether the Army's judgments had the necessary "policy" dimension, the district court had little difficulty answering in the affirmative: Disposal determinations required consideration of multiple policy factors, including "national security, resource constraints, and environmental impact," *id.* at 575, while remediation decisions "required

the Army to balance public safety, health, environmental impact, resource constraints, regulatory constraints, and stakeholder input," *id.* at 577. Accordingly, the district court held that the plaintiff could not show that the government conduct in question fell outside the scope of the discretionary function exception, and granted the government's motion to dismiss for lack of jurisdiction. *Id.* at 578.

The *Pieper* plaintiffs then filed this very similar suit before the same district court. According to the plaintiffs, *Waverley View* did not foreclose their claims, because they were pointing now to additional legal documents and directives that provided the mandatory and specific duties the court had found missing in *Waverley View*.

In the opinion we now review, the district court considered the proffered documents in detail, and determined that the direction they provided was neither mandatory nor specific enough to bind the Army. *See Pieper*, 2016 WL 4240086, at *4–5. Of the first two documents, Executive Orders issued by President Nixon, the court noted that one had been considered already in *Waverley View*, and held that regardless, neither removed the Army's discretion. *Id.* at *4. In particular, the court emphasized that any duties imposed by the Orders were pitched at a high level of generality—for instance, a provision stating that "[t]he use, storage, and handling of all [chemical and biological] materials . . . shall be carried out so as to avoid or minimize the possibilities for water and air pollution," *id.* (citation omitted)—and gave the Army no "*specified* instructions that it [wa]s compelled to follow," *id.* (quoting *Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995)). As for the final document, known as Fort Detrick Regulation 385-1, the court found that it too was neither "mandatory [n]or sufficiently specific to bind the Army," and also

noted that the very conduct the plaintiffs challenged—the disposal of potentially contaminated materials in Area B—was expressly contemplated by the regulation itself. *Id.* at *5.

Nor, the court held, could the plaintiffs satisfy their burden under the second step of the *Berkovitz* inquiry by showing that the Army's waste and remediation decisions "were not susceptible to policy analysis." *Id.* at *6. On the contrary, the court found, those decisions involve the balancing of multiple factors—including national security, environmental impact, and human health—and "[t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns." *Id.* (quoting *OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir. 2002)).

The plaintiffs timely appealed, raising substantially the same arguments they advanced in the district court. We review the district court's dismissal for lack of subject matter jurisdiction de novo. *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 179 (4th Cir. 2015). Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the reasoning of the district court. The Army's waste disposal and remediation practices at Fort Detrick fall squarely within the discretionary function exception to the FTCA. We express no opinion on the merits of the plaintiffs' tort claims, because we lack jurisdiction to hear them.

*AFFIRMED*